## McCALLUM v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1917.)

### No. 4854.

1. BANKS AND BANKING ⟨⟩257(3)—OFFENSES—EVIDENCE—SUFFICIENCY.

In a prosecution for misapplication of the funds, moneys, and credits of a national bank, in violation of Rev. St. § 5209 (Comp. St. 1916, § 9772), evidence *held* insufficient to sustain a conviction on a particular charge of abstraction of moneys.

2. BANKS AND BANKING ⟨⟩257(4)—EMBEZZLEMENT—EVIDENCE—HYPOTHETICAL CHARGE.

In a prosecution for misapplication of the funds of a national bank, in violation of Rev. St. § 5209, where the prosecution contended that defendant, the assistant cashier, failed to enter on the proper books $110.80 interest allowed the bank by a correspondent bank, and that, as the cash balance subsequently showed a shortage of $5.53, he must have abstracted the $110.80, the action of the court, interrogating the cashier, a witness for the prosecution, as to a hypothetical case of embezzlement of a deposit not entered on the books, was prejudicial, not being warranted by the evidence and tending to mislead the jury and prejudice them against defendant; this being particularly true as the cash showed a shortage, and, had defendant merely failed to enter the $110.80 interest on the proper book, the cash would not have balanced.

3. CRIMINAL LAW ⟨⟩786(2)—INSTRUCTIONS—CREDIBILITY OF TESTIMONY OF ACCUSED.

In a prosecution for misapplication of the moneys, funds and credits of a national bank, in violation of Rev. St. § 5209, declaring that any officer of a national banking association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association with intent to injure or defraud the association or any other company, body politic or corporate, or any individual person, shall be deemed guilty of a misdemeanor, the court denied requested charges that in order to justify a conviction of defendant, who was assistant cashier of the bank alleged to have been defrauded, the jury must be satisfied beyond a reasonable doubt that defendant intended by his acts to defraud the bank. The general charge instructed the jury on the presumption of defendant's innocence, the necessity of proof of guilt beyond a reasonable doubt, that there was an allegation in the indictment that the acts charged were done with intent to injure or defraud the bank, that the intent charged might be proven by the act done, that one may be presumed to have intended the natural and probable consequences of acts done, though such presumption is rebuttable, and that if a man knows the act he is about to commit will naturally or necessarily have the effect of injuring or defrauding another, and he voluntarily does the act, he is chargeable in law with the intention to injure or defraud. The court then summed up its charge in these words: "So the question for you to determine from all the evidence in this case is whether his intention in these different acts was to injure and defraud, by taking into consideration what the natural effect was and whether willful or lawful." *Held*, the charge minimized too much the testimony of the defendant as to

his intent, and restricted the jury in determining his intent too closely to the consideration of the rebuttable presumption of law that one may be presumed to have intended the natural and probable consequences of his acts intentionally done.

4. BANKS AND BANKING ☞257(1)—OFFENSES—INDICTMENT.
   An indictment charging a misapplication of the moneys, funds, and credits of a national bank, in violation of Rev. St. § 5209, which contained no averment that a credit which it alleged defendant unlawfully took with the bank ever injured the bank or caused it loss, is defective.

5. BANKS AND BANKING ☞257(1)—OFFENSES—INDICTMENT.
   Under Rev. St. § 5209, an indictment charging misapplication of the moneys, funds, and credits of a national bank is defective, where it did not charge that the moneys, funds, and credits were misapplied with intent to injure and defraud the banking association or any other company, body politic or corporate, or any individual person.
   Carland, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Thomas D. McCallum was convicted of misapplication of the moneys, funds, and credits of the Arkansas National Bank, in violation of Rev. St. § 5209, and he brings error. Reversed and remanded, with directions.

Lewis Rhoton, Thomas E. Helm, Edward B. Buchanan, and Gardner K. Oliphint, all of Little Rock, Ark., for plaintiff in error.

W. H. Martin, U. S. Atty., of Hot Springs, Ark., and W. H. Rector, Ass't U. S. Atty., of Little Rock, Ark.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

SANBORN, Circuit Judge. Thomas D. McCallum was indicted, tried, and convicted for misapplication of the moneys, funds, and credits of the Arkansas National Bank of Hot Springs, Ark., while he was assistant cashier, in violation of section 5209 of the Revised Statutes (section 9772, 9 U. S. Comp. Stat. Ann. 1916).

[1, 2] One of the charges of misapplication for which he was convicted was that on October 15, 1914, while he was assistant cashier and teller of the bank, he abstracted from its funds in his custody $110.80. Robert Neill, the cashier of the bank at the time of the trial, was called and examined by the United States to support this charge. On his direct examination he testified that the Arkansas bank kept an account with the National Bank of Commerce of St. Louis in August, September, and October, 1914, on which it allowed the Arkansas bank interest at the rate of 2 per cent. per annum on daily balances; that the St. Louis bank credited the Arkansas bank in its August account $110.80 on account of this interest for that month, that in the ordinary course of business the St. Louis bank sent a statement of its account between the banks to the Arkansas bank about 10 days after the close of each month, that when such a statement was received by the Arkansas bank it would be first properly entered on its reconcilement book, a book kept to reconcile the accounts of its correspondents

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

with those of the Arkansas bank, and then the proper entries would be made subsequently on the other books of the Arkansas bank; that this $110.80 was entered by McCallum on the reconcilement book, and that entry showed that the St. Louis bank had credited the Arkansas bank with this $110.80 interest, and that that interest was used as an exception in reconciling the account; that prior to this reconcilement the Arkansas bank had already charged the St. Louis bank on its ledger with this $110.80; that in the ordinary course of business this $110.80 would have been charged on the books of the Arkansas bank after the reconcilement to the St. Louis bank and credited to profit and loss; that it was charged in that way by direction of McCallum on October 15, 1914, but that it was not credited to profit and loss, or to interest account; and that at the close of business on October 15, 1914, the cash was short $5.53. In answer to questions of counsel for the government, the witness then testified in this way:

"Q. What would have been the result if the failure to credit that to profit and loss had been an inadvertence or mistake? What would have been the effect on the cash? A. The cash would have been over $110.80. * * * Q. How would it have been possible for his cash to have balanced there, unless he had abstracted $110.80 from the cash of the bank? A. It wouldn't occur, except, of course, there is a possibility of a corresponding error of some sort with somebody else."

On cross-examination this witness testified that, when the statement of the August account was received from the St. Louis bank in September, an entry was made on the reconcilement book of the Arkansas bank which—

"shows interest $110.80, as an exception on the credit side. That is in the handwriting of Mr. McCallum. Q. Does it show a credit or a debit? A. It is on the credit side. It shows that we were credited in St. Louis with that amount. We was to add that to the balance our books showed on the 31st. Q. You had already charged it on the Arkansas National Bank's books, had you not? A. On the ledger, yes; but not on the reconcilement book. Q. Was it charged on the books? A. It was not, until the 15th of October. Q. But it was later put in the regular form on the books, wasn't it? A. It was charged to the National Bank of Commerce; it wasn't credited to interest account. Q. How was it credited? A. I haven't any idea. The Court: I understood him to say it was not credited; it was charged. A. There was no corresponding credit. Q. It was simply, then, a failure to put the credit on the books, wasn't it? A. It is equal to that; yes, sir. Q. Well, that is what it was, wasn't it? A. Yes."

On redirect examination this colloquy was had:

"By District Attorney Martin: Q. You speak about that $110.80 being a mere matter of failure to credit it. Suppose it had been credited to profit and loss, that would have been a proper entry, would it not? A. Yes. Q. Then what would have been the result upon the cash? A. The cash would have balanced. Q. Failing to enter that there, what happened to the cash? A. In order for the cash to balance as close as it did, there must have been some money taken out. Q. You would (—) had to taken out a corresponding amount of money to (—) made the cash balance? A. Yes.

"By the Court: Q. Supposing I came in the bank and deposit $1,000, and I get it entered on my book, but on that evening there is no entry made on the books showing that I was credited with $1,000 and the cash balance, what became of that $1,000? A. It must have taken out of the cash. Q. In other words, it was embezzled or stolen; is that what it is? (Objected to by the defendant upon the ground of being incompetent, irrelevant, immaterial,

and upon the further ground that the same was prejudicial to the defendant, which objection was by the court overruled, and the defendant excepted.) A. Yes; in your hypothetical case it certainly would be."

This ruling of the trial court is assigned as error, and a careful consideration of all the evidence relative to this item of $110.80, and a comparison of it with the supposed case which the court presented, and by the testimony of the witness proved to constitute embezzlement, has convinced that it cannot be sustained. There was no evidence in this case that McCallum had deposited $110.80 in the bank, made no entry of it on the books of the bank, and that the cash balanced at the close of the day of the deposit, or of any facts at all similar to these. The sum of the evidence was that the St. Louis bank owed and had credited the Arkansas bank on August 31, 1914, $110.80 interest on deposit balances during August; that on receipt of the St. Louis bank's statement of account during the first half of September, McCallum entered that $110.80 on the reconcilement book of the Arkansas bank as an exception which showed a credit to the Arkansas bank of that amount with the St. Louis bank; that on October 15, 1914, he caused that $110.80 to be charged in the regular account books of the Arkansas bank against the St. Louis bank, but failed to credit it to profit and loss, or to interest account, as he should have done; that the effect of this failure to credit profit and loss necessarily was to make the cash balance on that night appear to be $110.80 over, but that balance was in fact $5.53 short; that this discrepancy might have resulted from the abstraction of the $110.80 from the bank by some one, or by a corresponding error in entries in the books regarding the accounts of others.

Upon this evidence and the fact that McCallum had access to the funds of the bank, and in the face of his testimony that he never abstracted this money, or any part of it, the United States convicted McCallum of the misapplication of this $110.80. But the indispensable basis of its case was that with the exception of the failure of McCallum to credit this $110.80 to profit and loss, or to interest account, the books of the bank were correct. The foundation of its case, without which it had no case, was that if that entry had been made, or if in its absence McCallum had not abstracted the $110.80, the books were correct and would have balanced. It rested its whole case on the proposition that the books were correct and would have balanced if the credit to profit and loss had been made, and its entire case was that as that entry was not made, and the books did not show the cash $110.80 over, McCallum must have taken it. But it introduced no evidence that the books of the bank were correct and would have balanced if the credit had been given to profit and loss, or if McCallum had not taken the money, and it demonstrated the fact that they were not correct and would not have balanced by the fact that at the close of the day the cash was $5.53 short. Neither the failure to credit the $110.80 to profit and loss nor the abstraction of the $110.80 could by any possibility have produced that shortage, if the books were otherwise correct and would have balanced. That shortage may have resulted from one or many errors in the bookkeeping, it could not have resulted from correct bookkeeping and the $110.80 transaction, and

the entire foundation of the government's case dropped from it, and at the close of the trial there was no substantial evidence to sustain the charge that McCallum abstracted this money.

Returning, now, to the introduction into this case of the supposed case of a culprit who deposited $1,000 with a bank, which was not entered on its books and the books still balanced, and the proof that some one was a thief and embezzler, the introduction of this case and proof was an error, because it tended to withdraw the attention of the jury from the facts in evidence in McCallum's case, and to fix them on another case and other facts, essentially unlike those in the case on trial, and to invite the danger that they might be misled to decide McCallum's case on the facts in the supposed case, because the supposed case and its facts were irrelevant and immaterial to the issues presented by the evidence of the facts in the case on trial, and far more baleful to the culprit than were those before the court, and because the introduction of the supposed case and its facts tended to prejudice the minds of the jurors against McCallum, and to lead them to think that the court was of the opinion that he was in a plight similar to that of the culprit in the supposed case. And as there was no substantial evidence to sustain the claim of abstracting this $110.80 the court also fell into an error in its refusal to instruct the jury as requested by counsel for McCallum to return a verdict of acquittal of the charge of misapplying this money.

[3] The statute under which this defendant was convicted expressly declares that his "intent * * * to injure and defraud the association or any other company, body politic or corporate, or any individual person," is an indispensable element of the offense of a misapplication of the funds of the bank. United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520; United States v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664; Dow v. United States, 82 Fed. 904, 906, 27 C. C. A. 140, 142. It is a universal rule that where the intent of a defendant is material his testimony to that effect is competent and relevant. In the case at bar the intent of McCallum was the crucial issue. At the times of the alleged misapplications he was the assistant cashier of the bank authorized to act for it, a customer of the bank with a deposit and checking account in his name as agent, in which he kept his individual deposits and credits, and at the same time he was the agent of an insurance company. One of the charges of misapplication was that he drew his draft on the insurance company for $227, took credit for the amount in his deposit account, and destroyed the draft. The evidence for the United States was that such a draft was drawn, that credit for it was taken by McCallum, that a letter of transmittal of the draft to a St. Louis bank was written, but the draft was never presented to the insurance company or paid. The defendant testified that he drew the draft on the insurance company to pay a claim of Dr. Barrie against it, took credit for the money in his deposit account, checked it out in the regular course of business, listed the draft out to the exchange clerk, who entered it up in the books in the regular way, that the draft had then passed out of the defendant's hands, and he knew nothing about its destruction.

Another charge was that the defendant caused the Exchange National Bank of Little Rock to pay $829 he owed to the insurance company and to charge it to the Arkansas National Bank at a time when McCallum's deposit account showed a credit balance of $1,179.-48. There were other charges of a like character. The defendant testified that he never had any intention to defraud the bank, or any other party, and that the discrepancies in the books were the results of his neglect to make the proper entries therein. From this brief reference to the evidence it will be seen how important the question of intent was in the trial of this case. Counsel for the defendant requested the court to instruct the jury that, in order to justify a conviction on any of the charges against him, they must be satisfied from the evidence beyond a reasonable doubt that the defendant intended, by his acts in reference to that charge, to defraud the bank. The court denied these requests, and gave a general charge in which it instructed the jury of the presumptive innocence of the defendant, of the necessity of proof of his guilt beyond a reasonable doubt, that there was an allegation in the indictment that the acts charged were done with intent to injure or defraud the bank, that the intent here charged may be proven by the act done, that one may be presumed to have intended the natural and probable consequences of acts intentionally done, that this presumption is rebuttable by a showing that the person acted in good faith without any wrong intention to injure or defraud the bank, that—

"if a man knows the act he is about to commit will naturally or necessarily have the effect of injuring or defrauding another, and he voluntarily does the act, he is chargeable in law with the intention to injure or defraud. It is not necessary that his object was primarily to injure or defraud. It might have been to benefit himself or another. These terms are used in the statute, and mean nothing more than that general intent to injure and defraud, which always arises in contemplation of law when one willfully and intentionally does that which is illegal and fraudulent, and which in its necessary and natural consequences must injure and defraud another."

After some farther remarks upon this subject the court closed its charge with these words:

"So the question for you to determine from all the evidence in this case is whether his intention in these different acts was to injure and defraud by taking into consideration what the natural effect was and whether willful and wrongful. So far as the defendant is concerned, he says that he never intended to do anything wrong; that he intended to pay that $1,275.67 note and had the money—had securities; but, as the district attorney says, he did not offer any of the securities when he borrowed the money; he did not ask any of the officers, who were authorized to make loans to authorize it, and did not obtain the consent of the president or the discount committee."

To this portion of the charge the defendant excepted, and he also excepted to the refusal of his request upon this subject. If the court had instructed the jury that the defendant's intent to defraud the bank was an indispensable element of each offense with which he was charged, that there is a presumption of law that one intends the natural and probable effect of the acts he intentionally does, that this presumption may be overcome by evidence, that a defendant's testimony as to his intent and his explanations of his acts and omissions

are competent and material evidence upon the subject of his intent, that acts are sometimes more persuasive evidence of intent than words, and that it was their duty to consider all the evidence of the acts and omissions of the defendant, the rebuttable presumption that one intends the natural and probable effect of his acts intentionally done, the testimony of the defendant as to his intent and his explanations of his transactions, and from them all to determine whether or not they were satisfied beyond a reasonable doubt that the acts with which he was charged were done with intent to defraud the bank, the charge would have been more satisfactory. As given it minimized, it almost ignored, the testimony of the defendant regarding his intent, and it in effect instructed the jury that they must determine his intent, not from his testimony on that subject, his acts, his explanations, and the rebuttable presumption of law, but that they must determine it by the natural and probable effect of his acts in view of the legal presumption without regard to his explanations and testimony. It deprived the defendant of the just and proper consideration by the jury of his explanations and testimony, and for that reason was erroneous. Cummins v. United States, 232 Fed. 844, 846, 147 C. C. A. 38.

[4] After the verdict and judgment, a motion in arrest of judgment was made which challenged the sufficiency of the counts of the indictment. A consideration of the various counts has convinced that the first count charging the misapplication of the $227 cannot be sustained because it contains no averment that the credit of $227 which it avers that McCallum took with the bank ever injured the bank or caused it any loss. There is no allegation in the count that he ever checked this money out of the bank, or that the bank in any way was deprived of it. "Merely giving credit to Miller on the books of the bank for the amount of the checks did not lessen the funds held by the bank, nor in fact defraud the association in any form. To complete a misapplication of the funds of the bank it was necessary that some portion thereof should be withdrawn from the possession or control of the bank, or a conversion in some form should be made thereof so that the bank would be deprived thereof." Dow v. United States, 82 Fed. 904, 906, 27 C. C. A. 140, 142; United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520; United States v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664.

[5] The second count of the indictment is bad, because it nowhere charges that the misapplication there specified was made by the defendant "with intent to injure and defraud the association, or any other company, body politic or corporate, or any individual person."

The judgment below must be reversed, and the case must be remanded to the court below, with instructions to grant a new trial; and it is so ordered.

CARLAND, Circuit Judge (concurring in part and dissenting in part). The jury returned a general verdict of guilty on all five counts of the indictment, and the defendant was sentenced on each of these counts. The judgment below, therefore, must stand so far as the indictment is concerned, even if counts 1 and 2 are bad, as argued in

the majority opinion. I do not think the court erred in its charge on the question of intent. I concur in the holding of the majority opinion that a verdict ought to have been directed as to count 3, and I also concur in the holding that it was prejudicial error for the trial court to make the statement which it did with reference to the charge in the third count. I am not satisfied that the evidence introduced under the third count of the indictment, taken in connection with the remarks of the trial court, did not prejudice the defendant as to the charges contained in the other counts.

I therefore concur in reversing the judgment below and granting a new trial, for the reasons stated in the majority opinion in discussing the evidence under the third count, and referred to in the opinion as the charge with reference to the abstraction of the sum of $110.80.