## DONEGAN v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. February 20, 1924.)

No. 4118.

1. **Banks and banking ⟨key⟩257(1)—Indictment charging abstraction of moneys must show method.**

As the words "abstracts or willfully misapplies," used in Rev. St. § 5209 (Comp. St. § 9772), have no settled, technical meaning, an indictment charging an abstraction or misapplication of moneys of a national bank must be supplemented by averments showing the manner or means whereby the abstraction or misapplication was made and that it was unlawful.

2. **Banks and banking ⟨key⟩257(1)—Indictment held to show how alleged abstractions from national bank were effected.**

An indictment charging defendant, who was president of a national bank, with willful abstractions of the bank's funds by placing in another bank a deposit slip reciting a deposit of checks, *held* to sufficiently show how the alleged abstractions were effected, though not specifically alleging the checks were those of the national bank.

3. **Banks and banking ⟨key⟩257(3)—Evidence held to support charge of willful abstractions by president of national bank.**

Evidence *held* to support an indictment charging the president of the national bank with willful abstractions of bank funds for his own use.

4. **Banks and banking ⟨key⟩257(3)—Evidence properly admitted on trial for abstracting funds.**

On a trial for willful abstraction of funds of a national bank of which defendant was president, where the government introduced a deposit slip showing a deposit in another bank to defendant's credit as trustee of checks for an amount equal to the amount charged to the national bank's account on the same day, there was no error in refusing to exclude other deposit tickets showing deposits on the same day to the credit of another bank of which defendant was president and to the credit of relatives of defendant and other persons of amounts equalling in the aggregate the amount of two checks charged to defendant's account on that day.

5. **Criminal law ⟨key⟩316—Incriminating evidence strengthened by failure to adduce rebutting evidence.**

Incriminating evidence is strengthened by failure to produce rebutting evidence tending to prove that the state of facts disclosed is consistent with innocence, when it properly may be inferred that exculpatory evidence would be forthcoming if there were an absence of guilt.

6. **Criminal law ⟨key⟩730(9)—Overruling objection to district attorney's statement held not reversible error.**

In a prosecution against a national bank president for willful abstractions of bank funds, the district attorney stated that the evidence showed that defendant was guilty of embezzlement. *Held*, that the overruling

of defendant's objection, with the statement that the charge was not technically embezzlement and that the court would explain the legal situation, was not reversible error, in view of Rev. St. § 5209 (Comp. St. § 9772), where the court's charge was correct and adequate.

**7. Criminal law ⊗⟹844(1)—Exception to large part of charge as a whole not sustainable.**

An exception to a part of the court's charge covering nearly three printed pages, much of which is obviously unobjectionable and free from error, is not sustainable.

**8. Criminal law ⊗⟹829(1)—Refusal to give request covered by charge not reversible error.**

A refusal to give written request, adequately covered by the charge *held* not reversible error.

In Error to the District Court of the United States for the Southern District of Florida; J. W. Mack, Judge.

Arthur E. Donegan was convicted of willful abstractions of funds of a national bank, and he brings error. Affirmed.

W. M. Toomer and Lawrence R. Milton, both of Jacksonville, Fla., and Alexander Akerman, of Orlando, Fla., for plaintiff in error.

Wm. M. Gober, U. S. Atty., of Tampa, Fla., and Harry W. Reinstine, Asst. U. S. Atty., of Jacksonville, Fla. (Wm. M. Gober, of Tampa, Fla., and Maynard Ramsey and Harry W. Reinstine, both of Jacksonville, Fla., on the brief), for the United States.

Before WALKER, Circuit Judge, and FOSTER and ERVIN, District Judges.

WALKER, Circuit Judge. The plaintiff in error, Arthur E. Donegan, was convicted on the first and second counts of an indictment found in March, 1919, against him, A. W. Gustus, and Paul K. Weaver. The first count, after alleging that Donegan was the president of the First National Bank of St. Cloud, Fla. (herein called the St. Cloud bank), on the 16th day of August, 1916, charged that on that day he did willfully, etc.—

"abstract certain of the moneys, funds, and credits of said national banking association, to wit, the sum of twenty thousand seven hundred sixty and seventy-seven hundredths dollars ($20,760.77) in the manner and by the means following, that is to say: That on the said 16th day of August, 1916, the said Arthur E. Donegan did willfully, wrongfully and unlawfully draw and place, and cause to be drawn and placed in the Citizens' Bank of Kissimmee, Fla., a certain deposit ticket in the words and figures following, to wit: 'Deposited in the Citizens' Bank of Kissimmee, Florida, by Arthur E. Donegan, trustee, August 16, 1916, .checks * * * St. Cloud $20,760.77'— and that and after making and placing in said Citizens' Bank of Kissimmee, Fla., of said deposit ticket, and by means thereof, there was taken from the moneys, funds, and credits of the said First National Bank of St. Cloud, Fla., then on deposit in said Citizens' Bank of Kissimmee, Fla., and placed to the credit of Arthur E. Donegan, trustee, the said sum of twenty thousand, seven hundred sixty and 77/100 ($20.760.77) by the direction and authority of the said Arthur E. Donegan, as such president as aforesaid, a more particular description of said moneys, funds, and credits being to the jurors unknown, and said sum of money was thereby abstracted from said First National Bank of St. Cloud, Fla., and was wholly lost to said First National Bank of St. Cloud."

The second count charged that Donegan, being such president, did on the same date willfully, etc.—

"misapply certain of the moneys, funds, and credits of said national banking association, to wit, the sum of twenty thousand seven hundred sixty and 77/100 dollars ($20,760.77) in the manner and by the means following, that is to say: That the said Arthur E. Donegan as such president as aforesaid of said national banking association did on the said 16th day of August, 1916, willfully, wrongfully, unlawfully, and with intent to injure and defraud said national banking association and said divers other persons to the grand jurors aforesaid unknown, then and there by means of a certain deposit ticket dated August 16, 1916, place and cause to be placed to his credit as trustee in the Citizens' Bank of Kissimmee, Fla., the said sum of twenty thousand seven hundred sixty and 77/100 dollars ($20,760.77) of the moneys, funds, and credits of the said First National Bank of St. Cloud, Fla., for the use, benefit, and gain of him, the said Arthur E. Donegan, and said other persons to the grand jurors unknown, which said sum was thereby then and there converted to the use, benefit, and advantage of him, the said Arthur E. Donegan, and said other persons to the jurors unknown, and was wholly lost to said First National Bank of St. Cloud, Fla."

[1] Each of the counts charged that Gustus and Weaver aided and abetted Donegan in the commission of the offense charged. The court overruled demurrers to each of those counts. It was contended that each of the counts was defective in that it did not sufficiently allege the means whereby the abstraction or misapplication was accomplished, and that it was impossible for Donegan to abstract or misapply the money or credits of the St. Cloud bank by the means alleged. Each of the counts undertakes to charge an offense denounced by R. S. § 5209 (Comp. St. § 9772). As the words "abstracts or willfully misapplies," used in that statute, have no settled technical meaning, an indictment charging an abstraction or misapplication of moneys, funds, or credits of a national bank must be supplemented by further averments showing the manner or means whereby the abstraction or misapplication was made, and that it was an unlawful one. Batechelor v. United States, 156 U. S. 426; Rieger v. United States, 107 Fed. 916.

[2] The first count charged in effect that the alleged abstracting was done by Donegan drawing and placing, and causing to be drawn and placed, in the Citizens' Bank of Kissimmee (herein called the Kissimmee bank) a copied deposit slip. That deposit slip on its face purported to evidence the deposit to Donegan's credit of "checks  *  *  * St. Cloud, $20,760.77." A deposit to one's credit in a bank of checks is a means of bringing about the withdrawal of the amounts of the checks from the balances to the credit of the makers thereof and placing such amounts to the credit of the depositor. An amount to the credit of one bank depositor may be abstracted as a result of his checks being deposited to the credit of another depositor. The allegations charge the doing of acts ordinarily having the result of transferring credits from one or more depositors to another. We think that each of the counts sufficiently shows how the alleged abstraction or misapplication was effected, that they could be so effected, and that error was not committed in overruling the demurrers to those counts. The absence of a specific allegation to the effect that the language of the deposit slip, "Checks  *  *  * St. Cloud," meant checks drawn by the St. Cloud bank did not keep the allegations made from having the effect of showing how the charged abstraction and misapplication were made.

[3, 4] Evidence to the following effect was included in that introduced by the government: At the time mentioned in the indictment Donegan was president of both the St. Cloud bank and the Kissimmee bank, Gustus was the cashier of the St. Cloud bank, and Weaver was the cashier of the Kissimmee bank. A by-law of the St. Cloud bank required its checks to be signed by its president and cashier. The directors of that bank did not, on or prior to August 16, 1916, authorize Donegan, Gustus, or Weaver to withdraw from the funds to its credit with the Kissimmee bank the sum of $20,760.77, or any like amount. One Gedge, who became cashier of the Kissimmee bank after August 16, 1916, identified the transfer individual ledger of that bank as a book of its customer's accounts and a part of the records of that bank.

H. S. Bullock testified to the following effect: During the period beginning in September, 1915, and ending in October, 1917, witness was paying and receiving teller, and one Woodham, who is now dead, was bookkeeper of the Kissimmee bank. The transfer individual ledger of the Kissimmee bank pointed out by witness is a part of the records of that bank that were kept while witness was with it. Some of the entries in the account in that book of the St. Cloud bank with the Kissimmee bank were made by witness and some were made by Woodham, who kept most of the accounts in that book. The entries made by witness and Woodham were made in the regular course of duty. Witness is unable to say who made the last entries in the account of the St. Cloud bank.

Thereupon the government introduced in evidence without objection the following entries in the account of the St. Cloud bank with the Kissimmee bank, as shown in said book:

| Old Balance. | Checks. | | | Deposits. | Balance Overdrafts. |
|---|---|---|---|---|---|
| 13,260.77 | 600.00 | Aug. | 11 | 3,900.00 | |
| | | Aug. | 11 | 1,000.00 | 17,560.77* |
| 17,560.77 | | Aug. | 15 | 2,000.00 | 19,560.77* |
| 19,560.77 | 20,760.77 | Aug. | 16 | 500.00 | |
| | | Aug. | 16 | 700.00 | |

Thereupon the government introduced, without objection, the following entries in the account of Arthur E. Donegan, trustee, with the Kissimmee bank, as shown by his account in said book covering the period beginning July 31, 1916, and ending August 16, 1916:

| Old Balance. | Checks. | | | Deposits. | Balance Overdrafts. |
|---|---|---|---|---|---|
| 14.24 | | July | 31 | 60.00 | 74.24* |
| 74.24 | 9,608.55 | Aug. | 16 | 5,000.00 | |
| | 3,539.62 | Aug. | 16 | 20,760.77 | |
| | 3,331.73 | Aug. | 16 | 900.00 | 5,055.11* |
| 5,055.11 | 5,000.00 | Aug. | 16 | | 55.11* |
| | 200.00 | | | | |
| | 5,000.00 | | | | |

A package of documents handed to witness was identified by him as the deposit tickets of individual accounts in the Kissimmee bank for the

month of August, 1916. In most cases those tickets were handled by witness. They are part of the records of the Kissimmee bank. Witness has in his hand a deposit ticket in the handwriting of the defendant Weaver, in words and figures as follows:

Deposited in Citizens' Bank of Kissimmee, Kissimmee, Fla., by Arthur E. Donegan, Trustee.

8/16/191...

Checks    St. C. .................................................:.... 20.760.77

20,760.77

The word "St. C." on that ticket was information not for the Kissimmee bank's records. It was for the purpose of the depositor. Witness would say that it meant St. Cloud. It would properly mean the bank over there. At the request of the district attorney, witness took from the package of deposit tickets fifteen tickets, all dated August 16, 1916, the aggregate amount whereof was $8,539.62; those tickets showing different depositors and amounts, and each of them being in form like the following one:

Deposited in Citizens' Bank of Kissimmee, Kissimmee, Florida, by State Bank of Haines City.

Haines City, Flor., Aug. 16, 1916.

Currency ......................................................

Gold ......................................................

Silver ......................................................

Checks ......................................................

A. E. D.    5,000.—

5,000.—

Two of those tickets are in the handwriting of the defendant Weaver. Witness does not know in whose handwriting the other tickets are. In connection with the banking affairs of the Kissimmee bank, the initials "A. E. D." stood for Arthur E. Donegan. On August 16, 1916, Donegan was the president of the State Bank of Haines City. The depositors named in two of said fifteen deposit tickets are brothers of A. E. Donegan. The depositors named in two others of said fifteen tickets are brothers of Pat Johnston, who is related to Arthur E. Donegan by marriage. After those fifteen deposit tickets were tendered in evidence by the government and admitted, the defendants moved to strike out and exclude from the consideration of the jury all of those fifteen deposit tickets except those testified to be in the handwriting of the defendant Weaver, that evidence having been objected to when it was offered. Defendants excepted to the court's denial of that motion. The witness examined the individual ledger of the Kissimmee bank and stated that he failed to find the account of Donegan in that ledger on August 16, 1916. Witness assisted in keeping the books. In the usual course of business the deposit tickets and debit tickets or checks were carried forward to the proper ledger. The ledger entries were based upon deposit slips or checks or ledger tickets. If they show on the records they were evidently posted. The Kissimmee bank had two ledgers, one general and an individual ledger, and these were always called back in the evening. Woodham took one and witness took the other, and compared them, and from that witness would say that the ledger

sheets correctly reflect the debit and credit slips. The St. Cloud bank was closed in December, 1917. The pages of its general ledger covering the period beginning October 4, 1916, and ending November 28, 1916, are missing. They were missing when a national bank examiner made an examination some time after November 28, 1916. A witness testified that he made a search for canceled vouchers between the Kissimmee bank and the St. Cloud bank, but did not find any. The Kissimmee bank did not have a deposit account in the St. Cloud bank. The canceled checks of the St. Cloud bank on the Kissimmee bank would be returned to the former. On the book of the St. Cloud bank, showing its account with the Kissimmee bank, there is no debit in the sum of $20,000 or any similar sum from August 16 to August 21, 1916. Other evidence was adduced, including some tending to explain entries under the word "checks" made in the Arthur E. Donegan, trustee, account with the Kissimmee bank under the date August 16.

Upon the conclusion of the evidence introduced by the government, Donegan moved the court to instruct the jury to find a verdict in his favor. He excepted to the denial of that motion. No evidence was offered by the defendants.

The entries on Donegan's account with the Kissimmee bank under the word "checks" and the date August 16, in connection with evidence tending to prove that such entries were made in the usual course of business and were based on checks drawn by the depositor, tended to prove that Donegan issued his checks to the amounts of such entries. It well might have been inferred that it would not have been in the usual course of business to enter on a depositor's account a charge or debit of the amount of checks not drawn or authorized by him. The entry on the St. Cloud bank's account in the Kissimmee bank of the item $20,-760.77 under the word "checks" and the date August 16, in connection with evidence tending to prove that such entries were made in the usual course of business and were based on checks drawn by the depositor, tended to prove that the entry was based on the St. Cloud bank's duly signed checks to the amount indicated by that entry. The date of the deposit ticket which showed "checks St. C. $20,760.77" is the same as that of a charge or debit of $20,760.77 on the St. Cloud bank's account in the Kissimmee bank, and the same as that of a credit of $20,760.77 on the Arthur E. Donegan, trustee, account in the Kissimmee bank. The aggregate amount of the above-mentioned fifteen deposit tickets, dated August 16, 1916, $8,539.62, is exactly the same as the aggregate amount of two charges of the same date under the heading "Checks" appearing on the Arthur E. Donegan, trustee, account in the Kissimmee bank. It is not to be denied that there is probative significance in evidence of circumstances disclosing such coincidences. When considered together and in connection with other evidence adduced, the circumstances that the balance standing to Donegan's credit in his account with the Kissimmee bank was less than $100 during the period between July 31 and August 16, 1916, that that account shows a deposit of $20,760.77 to his credit on August 16 and debits on the same day of checks in amounts aggregating more than $20,000, furnish support for the inference that the depositor, when he drew checks in amounts aggregating such large sums, was aware that the balance to his credit

prior to August 16, presumably known to him to be quite small, was increased by the deposit of $20,760.77, which resulted in the abstraction or misapplication of that amount of a credit to which the St. Cloud bank was entitled.

[5] What has been said sufficiently indicates the grounds of the conclusions reached that evidence adduced, unexplained as it was except as above indicated, supported charges embraced in the counts of the indictment on which Donegan was convicted, that the court did not err in overruling the above-mentioned motion to exclude evidence, or in denying Donegan's motion that the jury be instructed to find a verdict in his favor. It was permissible to base inferences adverse to defendants on the absence of explanatory evidence tending to show that circumstances disclosed by evidence adduced, including the coincidences mentioned, the mutilation of books, and the disappearance of records and papers customarily guarded and preserved, while the defendants, by virtue of their respective official positions, had supervision of the affairs of the banks, were consistent with the innocence of the defendants. Incriminating evidence is strengthened by a failure to adduce rebutting evidence tending to prove that the state of facts disclosed is consistent with innocence, when it properly may be inferred that exculpatory evidence would be forthcoming if there were an absence of guilt. United States ex rel. Bilokumsky v. Tod (Nov. 12, 1923), 263 U. S. 149, 44 Sup. Ct. 54, 68 L. Ed. ——.

[6] In the course of his argument to the jury the district attorney stated that the evidence showed that Donegan was guilty of embezzlement. Donegan's attorneys objected to that statement. In overruling that objection the court stated that the charge was not technically embezzlement, and that he would explain the legal situation. The court's charge to the jury contained correct and adequate instructions as to the charges of abstraction and willful misapplication made in the first and second counts of the indictment. Section 5209 of the Revised Statutes puts on the same footing an embezzlement, an abstraction, and a willful misapplication by a president, director, cashier, teller, clerk, or agent of a national banking association of the moneys, funds, or credits thereof. Under the circumstances disclosed, the above-mentioned action of the court with reference to the objection to the statement made in argument by the district attorney was not reversible error.

[7] Donegan excepted to a part of the court's charge which, as it is set out in the printed record, covers nearly three pages thereof. Much of that part of the court's charge is obviously unobjectionable and free from error. The exception to such part of the charge as a whole is not sustainable.

[8] Donegan excepted to the court's refusal to give several written charges requested in his behalf. So far as any of those charges were correct and applicable to the evidence, they stated propositions which were correctly and adequately covered by instructions contained in the charge given by the court. This being so, the judgment is not subject to be reversed because of the court's refusal to give those charges or any of them.

The record shows no reversible error. The judgment is affirmed.