STATE, Appellant, v. JOHNSON et al, Respondent.

(210 N. W. 353.)

(File No. 6032.     Opinion filed October 11, 1926.).

1.  **Banks and Banking—Criminal Law—Conversion of Bank Funds by Use of Accommodation Paper Held Offense Distinct From Others in Statute (Rev. Code 1919, § 8991).**

    Under Rev. Code 1919, § 8991, making any officer or employee of a bank, "who embezzles, abstracts, or willfully misapplies or wrongfully diverts to his own use, through the use of accommodation notes or credits" property of bank, guilty of a felony, the words "through the use of accommodation notes or credits" modifies only the words "wrongfully diverts to his own," and constitutes a separate offense from others named.

2.  **Indictment and Information.**

    Indictment charging one offense is not bad because facts alleged are also sufficient to establish another offense.

3.  **Banks and Banking—Indictment Charging Misapplication of Bank Funds Need Not Allege That the Particular Funds Were Withdrawn From Bank (Rev. Code 1919, § 8991).**

    Under Rev. Code 1919, § 8991, relating to misapplication of funds of bank, offense is committed where any funds of bank are willfully misapplied by officer or employee with intent to

injure bank, and hence indictment need not allege that the particular funds were withdrawn from bank.

4.  Banks and Banking—In Indictment Charging Misapplication of Bank Funds Under Code 1919, § 899l, Allegation Held to Sufficiently Charge That Funds Were Withdrawn From Bank (Rev. Code 1919, §§ 3577, 4725, 4726).

Indictment under Rev. Code 1919, § 8991, charging misapplication of bank funds, alleging named sum "was through the accounts of various persons unknown withdrawn and wholly lost to said bank," sufficiently charged that funds were withdrawn from bank, in view of Rev. Code 1919, §§ 3577, 4725, 4726.

5.  Indictment and Information.

Indictment charging misapplication of bank funds under Rev. Code 1919, § 8991, held sufficient against officer of bank, and therefore good against demurrer by codefendant charged with aiding and abetting such officer.

6.  Indictment and Information—Indictment Charging Aiding and Abetting in Misapplication of Bank Funds Alleging Codefendant Was Officer of Bank on Date Worthless Note Was Delivered Held Sufficient; Time of Prior Agreement Being Immaterial (Rev. Code 1919, §§ 3594, 8991).

Where indictment charging aiding and abetting in misapplication of bank funds, under Rev. Code 1919, § 8991, alleged defendant's delivery of worthless note on certain date in accordance with prior arrangement, but did not allege that codefendant was officer of bank prior to that date, held sufficient, since time of agreement to commit crime is immaterial, and, if crime is thereafter carried out pursuant to agreement, both are guilty as principals whether both are present or not, in view of Rev. Code 1919, § 3594, defining principals.

7.  Indictment and Information—Indictment Charging Aiding and Abetting in Misapplication of Banks Funds Held Sufficient (Rev. Code 1919, § 8991).

Indictment charging aiding and abetting in misapplication of bank funds under Rev. Code 1919, § 8991, held not bad because of uncertainty of allegation that defendant did "deliver, or cause to be delivered," a note by which money was wrongfully withdrawn from bank, since he was not charged with delivering a note, but with aiding and abetting misapplication of bank funds.

---

Note.—See Headnote, (1), American Key-Numbered Digest, Banks and banking, Key-No. 61, 7 C. J. Sec. 199; (2) Indictment and information, Key-No. 125(47), 31 C. J. Sec. 334; (3) Banks and

banking, Key-No. 62, 7 C. J. Sec. 199; (4) Banks and banking, Key-No. 62, 7 C. J. Sec. 199; (5) Indictment and information, Key-No. 83, 31 C. J. Sec. 288; (6) Indictment and Information, Key-No. 87(2,), 31 C. J. Sec. 288 (Anno), Criminal law, 16 C. J. Secs. 103, 113; (7) Indictment and information, Key-No. 83, 31 C. J. Sec. 181.

Misapplication of funds of bank by officer as embezzlement, see 3 R. C. L. 507.

Sufficiency of indictment charging misapplication of bank funds, see 3 R. C. L. 513.

Sufficiency of indictment charging aiding and abetting in misapplication of bank funds, see 3 R. C. L. 512.

Appeal from Circuit Court, Turner County; Hon. L. L. FLEEGER, Judge.

Frank H. Johnson and J. C. Cozad were indicted for misapplication of bank funds. A demurrer of defendant last named to the indictment was sustained, and the State appeals. Order overruled.

*Buell F. Jones,* Attorney General, and *Caldwell, Caldwell & Burns,* of Sioux Falls, for the State.

*Gardner & Churchill,* of Huron, for Respondents.

SHERWOOD, J. The defendants were jointly indicted by a grand jury in Minnehaha county. The indictment charged in substance:

"That Frank H. Johnson, * * * on the 14th of January, 1924, * * * was president of the Sioux Falls Trust & Savings Bank, * * * then and there doing business in Minnehaha county, S. D., as a bank, and was vested with power of control and management over the funds, property, officers, and clerks of said bank.

"That Cozad was a resident of the county of Bennett and state of South Dakota. That Johnson and Cozad then and there, * * * with intent to injure and defraud said * * * bank, and without the consent of said bank or of the directors of said bank, did willfully and feloniously misapply by use of a credit certain money, funds, credits and property of said * * * bank * * * by the following means: That said Johnson did cause said * * * bank to discount a certain promissory note for the principal sum of $6,500 dated January 11, 1924, * * * signed with the name of Cleo C. Smith. Said Johnson did then and there falsely

represent to said * * * bank that said note was secured by mort-
gage upon real property in Bennett county, S. D., owned by said
Smith. That said note was not, in fact, secured at all. That the
maker was not able to pay the same as and when it would become
due. That the maker did not own real property in Bennett coun-
ty, S. D. That the note was an accommodation note, and the
maker had received, and would receive, no consideration therefor,
and that the proceeds of said note, the aforesaid sum of $6,500,
was under the direction of said Johnson, then and there knowingly
and willfully, and in fraud of said bank, applied to the use, bene-
fit and advantage of persons to the grand jurors unknown.
And that thereafter the sum of $6,500 was through the accounts
of various persons unknown withdrawn and wholly lost to said
bank, and the funds and property of the same were and are
depleted in that amount.

"* * * The said J. C. Cozad * * * did then and there know-
ingly, willfully, unlawfully, and feloniously, and with intent to in-
jure and defraud the said * * * bank, aid, assist, and abet the
said Frank H. Johnson to so willfully misapply the funds of a
bank * * * in the following manner: That the said J. C. Cozad,
prior to the 14th day of January, * * * did procure the signature
of one Cleo C. Smith to a certain promissory note, * * * which
said note is and was the same note so discounted by the said
* * * bank, as aforesaid, well knowing that the said * * * Smith
did not own any real property, * * * and well knowing that the
said note * * * was in fact not secured at all, * * * and * * *
well knowing that the said note * * * was an accommodation note,
* * * and in accordance with an arrangement and plan theretofore
had and made by and between him, the said J. C. Cozad, and the
said Frank H. Johnson, * * * did thereafter, and on or about the
14th day of January, * * * deliver, or cause to be delivered, to
the said Frank H. Johnson as president of the said * * * bank,
the said note so executed, * * * and that the said Frank H. John-
son and J. C. Cozad did thereby, and by said means, commit the
crime of willful misapplication of funds of a bank through the
use of a credit contrary to the form, force, and effect of the
statute."

To this indictment the defendant Cozad interposed his separ-
ate demurrer. From an order sustaining this demurrer the state

has appealed. The demurrer was based on four grounds, only three of which are now argued by respondent. as follows:

"(1) The indictment does not state a public offense even against the defendant, Frank H. Johnson.

"(2) The acts charged against the defendant Cozad not in aid of the offense attempted to be charged against Johnson.

"(3) The indictment is so indefinite and uncertain as to be violative of defendant's constitutional right to be advised of the nature and cause of the accusation against him."

Under No. 1 it should be observed: The indictment is based upon section 8991, Code 1919, which makes certain acts therein specified a felony when committed by a "president, director, cashier, officer, teller clerk, employee or agent of any bank." Under the terms of the statute the defendant Cozad could not alone be guilty of a violation of the statute, but he is charged as aiding and abetting his codefendant, Johnson, president of the bank, in a violation by Johnson of the provisions of the statute.

By virtue of section 4737, Code 1919 all persons concerned in the commission of a felony must be prosecuted, tried, and punished as principals, yet the defendant Cozad, not being an officer of the bank, nor a director, employee, or agent thereof, could not himself be guilty of a violation of the statute other than by aiding and abetting therein, and, if the acts charged by the indictment to have been committed by the codefendant, Johnson, president of the bank, do not sufficiently establish a violation of the statute by Johnson, manifestly the indictment has not stated a public offense as against Cozad by charging him, however sufficiently, with having aided and abetted Johnson.

The statute on which the indictment was based reads:

"*Embezzlement—Penalty.* Every president, director, cashier, officer, teller, clerk, employee or agent of any bank who embezzles, abstracts or willfully misapplies or wrongfully diverts to his own use, through the use of accommodation notes or credits, any of the money, funds, credits or property of the bank, whether owned by it or held in trust; who wrongfully withholds payment or remittance of the proceeds of any collection which may come into his hands; who, without authority of the directors, issues or puts forth any certificate of deposit, draws any order or bill of ex-

change, makes any acceptance, assigns any note, bond, draft, bill of exchange, judgment or mortgage; or who makes any false entry in any book, report or statement of the bank or report or statement required by the provisions of this chapter, with intent to injure the bank or any person, or to deceive any officer of the bank, any one appointed to examine the affairs of the bank or any other person, shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not less than five nor more than twenty years." Rev. Code 1919, § 8991.

[1, 2]   It appears to be the view of respondent that no offense can be committed under this act, except by "the use of accommodation notes or credits," but we are of the opinion that the words "through the use of accommodation notes or credits" modify only the immediately preceding words "wrongfully diverts to his own use," and for any named officer wrongfully to divert to his own use any of the money, funds, credits, or property of the bank through the use of accommodation notes or credits constitutes a new, separate, and distinct offense injected into the statute by the 1915 amendment and superadded to the offense previously thereby designated.   The various offenses specified in the statute are separate and distinct, and not synonymous, notwithstanding the fact that some of the specified offenses may include others. United States v. Cadwallader (D. C.) 59 F 677; United States v. Northway, 120 U. S. 327, 7 S. Ct. 580, 30 L. Ed. 664.   For example, the cashier of a bank might design to take $1,000 out of the bank's money for himself unlawfully, and the course of conduct pursued by him in securing the single item of $1,000 might render him guilty at one and the same time, under section 8991, of embezzling the bank's money, or of willfully misapplying the bank's money, of wrongfully diverting the bank's money to his own use through accommodation notes or credits, or of making false entries in the books of the bank with intent to deceive. Yet the offenses are absolutely distinct, and evidence sufficient to prove one offense may not be sufficient to prove another, and an indictment charging one offense is not bad because the facts therein set out are also sufficient to establish another offense.

[3]   Respondent further contends:

"The indictment contains no allegation that the $6,500 alleged

to have been received as the proceeds of the note discounted was ever withdrawn from the bank."

Clearly the indictment does not allege $6,500 or any other sum was received as the proceeds of the note. On the contrary, it alleges the bank received only the worthless note of Cleo C. Smith. There was therefore no special fund, and no part of the general funds, of the bank received or set apart to be traced or specifically accounted for. The phrase "proceeds of said note" used in the indictment may therefore be rejected as surplusage. The offense here charged is committed if "any of the funds of the bank" are willfully misapplied with intent to injure the bank or any person or to deceive any officer or person appointed to examine the bank or any other person. Section 8991, R. C. 1919. Stripping section 8991, R. C. 1919, of everything not applicable to the instant case, it would read:

"Every * * * officer, * * * of any bank who * * * willfully misapplies * * * any of the * * * funds, credits or property of the bank, * * * with intent to injure the bank * * * shall be deemed guilty of a felony."

Treating this indictment in the same manner, we think it fairly charges that, while Johnson was an officer of the Sioux Falls Trust & Savings Bank, and acting as such, he willfully and feloniously misapplied $6,500 of the funds of said bank by discounting the note of one Cleo C. Smith, representing to the bank that the note was secured on real estate, but knowing it was unsecured, without consideration and worthless. Johnson caused the bank to discount said note, and the aforesaid sum of $6,500 was, under the direction of said Johnson, then and there, knowingly, willfully, and in fraud of said bank, applied to the use, benefit, and advantage of persons to the grand jurors unknown, and thereafter the sum of $6,500 was through the accounts of various persons unknown withdrawn and wholly lost to said bank, and the funds and property of the same were and are depleted in that amount.

[4] Manifestly the indictment does not charge Johnson with receiving or obtaining this money. It therefore does not charge Johnson with obtaining money by false pretenses, as respondent contends. Respondent is also in error in his conten-

tion that the indictment does not charge the funds were withdrawn from the bank. It clearly says:

"Thereafter the sum of $6,500 was through the accounts of various persons unknown withdrawn and wholly lost to said bank."

Section 3577, R. C. 1919, provides:

"The rule of the common law that penal statutes are to be strictly construed has no application to this Code. All its provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice."

Section 4725, R. C. 1919, provides that the indictment is sufficient if "the offense charged is designated in such a manner as to enable a person of common understanding to know what is meant," and section 4726 provides:

"No indictment or information is insufficient, nor can the * * * proceedings thereon be affected; by" any "imperfection in * * * form, which does not tend to * * * prejudice * * * the substantial rights of the defendant upon the merits."

[5] We have carefully considered the authorities cited by respondent in which the federal courts have held statutes similar to our section 8991 should be strictly construed, but such authorities are not applicable in this state, because our Legislature has provided different rules of construction and interpretation which are binding on this court. State v. Whitmarsh, 26 S. D. 426, 128 N. W. 580; State v. Whealey, 5 S. D. 427, 59 N. W. 211. We therefore hold this indictment sufficient as to the defendant Frank H. Johnson.

[6] Under No. 2 it seems to be respondent's contention that, because the indictment does not charge Johnson with being an officer of the bank until January 14, 1924, and the only specific act of aiding or abetting charged against Cozad was the delivery of the Smith note to Johnson on that date, therefore no plan or arrangement between Johnson and Cozad or steps taken by either of them to commit the crime charged prior to that date could be shown, or, if shown, would be in aid of the crime charged. In other words, Cozad could not be charged with aiding or abetting a crime until such time as it was shown Johnson could have committed it.

26—Vol. 50, S. D.

With this contention we cannot agree. Manifestly, if there was an agreement between two parties to commit a crime, such agreement must precede its commission. The length of time it precedes it is immaterial. If pursuant to such agreement the crime planned by both is actually carried out by one pursuant to the joint plan, both are guilty as principals, even though only one is present when the crime is committed. Section 3594, R. C. 1919; State v. Phelps, 5 S. D. 480, 59 N. W. 471.

[7] Under No. 3 respondent contends that, because the indictment alleges Cozad did, on January 14, 1924, "deliver, or cause to be delivered" the Smith note to Johnson, his constitutional rights have been invaded; in other words that the indictment does not appraise him of the acts and facts which it is claimed constitute the offense charged against him. The offense charged against Cozad is not delivering or causing to be delivered a note. It is aiding Johnson in misapplying the funds of a bank by means of a credit. The charge in the indictment concerning the delivery of the note relates to a mere matter of evidence. It is not connected with the charge or definition of the offense, and does not vitiate the indictment. 31 C. J. p. 664, § 181; 1 Wharton's Criminal Law, p. 320; Bishop v. State, 118 Ga. 799, 45 S. E. 614; State v. Rowe, 104 Iowa, 323, 73 N. W. 833; United States v. Snyder (C. C.) 8 F. 804; State v. Williams, 20 S. D. 492, 107 N. W. 830.

We think the indictment against Cozad sufficient.

The order of the circuit court sustaining the demurrer is overruled.

DILLON, J., not sitting.

CAMPBELL, J. (dissenting). Section 8991, Code 1919, upon which the indictment here is based, first appeared in our law as section 39 of article 2, chapter 222, Laws 1909, and was amended to its present form by section 43, art. 2, c. 102, Laws 1915. The source statute is section 5209, Rev. St. U. S. (U. S. Comp. § 9772), relating to officers and employees of national banking associations, which is followed almost verbatim in our statute. The federal statute first appears as section 55, Act. of June 3, 1864, chapter 106 (13 Stat. L. 116), and has been frequently before the courts since that date, and comes to us

charged with such interpretations thereof as may have been rendered by the Supreme Court of the United States—at least it may properly be said that in interpreting this statute we should give respectful consideration to the decisions of that court thereon, extending over a period of some 45 years prior to the date when we adopted the statute as our own.

In the instant case the indictment purports in general terms to charge "willful misapplication of the funds of the bank by use of a credit." The indictment cannot be sustained under the provision brought into the statute by the 1915 amendment as an indictment for "wrongfully diverting to his own use, through the use of accommodation notes or credits," because there is no allegation in the indictment that the money in question was in fact diverted to the use of the officer Johnson. On the other hand, if the indictment in fact is sufficient to show "willful misapplication" under the statute, the indictment could be in no wise harmed by the fact that the means or method by which such misapplication is charged to have been accomplished is by use of a credit.

The federal decisions on the proposition of "willful misapplication" under the federal statute from which our own was taken as hereinbefore indicated are voluminous, and on some points difficult to reconcile, and an examination of the cases lends sympathetic understanding to the frame of mind of the United States district judge who ended his opinion on demurrer to a 16-count indictment for "willful misapplication" in these words:

"It is much to be hoped that this decision will be reviewed. Anything more unsatisfactory than the ruling cases on 'willful misapplication' I have rarely met." Hough, D. J., in United States v. Heinze (C. C.) 183 F. 907. See also United States v. Heinze (C. C.) 161 F. 425; United States v. Morse (C. C.) 161 F. 429; United States v. Heinze, 218 U. S. 532, 31 S. Ct. 98, 54 L. ed. 1139, 21 Am. Cas. 884.

However, regardless of what conflicts, whether real or apparent, may appear in the federal decisions on some phases of this matter, I believe that they are entirely uniform on two propositions: First, that the words "willfully misapplied" have no settled technical meaning, and must be aided by averments showing how the misapplication was made, and that it was unlawful.

Second, that to establish the offense of "willful misapplication" under the statute it must appear, and must be charged as one of the essential elements, that by reason of such misapplication funds or property of the bank have been absolutely withdrawn beyond the control of the bank, and its funds and property by such misapplication actually depleted.

"The words 'willfully misapplied' are, so far as we know, new in statutes creating offenses, and they are not used in describing any offense at common law. They have no settled technical meaning like the word 'embezzle' as used in the statutes, or the words 'steal, take and carry away,' as used at common law. They do not, therefore of themselves fully and clearly set forth every element of the offense charged. It would not be sufficient simply to aver that the defendant 'willfully misapplied' the funds of the association. This is well setted by the authorities we have already cited. There must be averments we have already cited. There must be averments to show how the application was made and that it was an unlawful one." United States v. Britton, 107 U. S. 665, 2 S. Ct. 512, 27 L. ed. 520.

"By the settled rules of criminal pleading, and by the previous decisions of this court, the words 'willfully misapplies,' have no settled technical meaning, (such as the word 'embezzle' has in the statutes, or the words 'steal, take and carry away' have at common law,) do not, of themselves, fully and clearly set forth every element necessary to constitute the offense intended to be punished; but they must be supplemented by further averments, showing how the misapplication was made, and that it was an unlawful one. Without such averments, there is no sufficient description of the exact offense with which the defendant is charged, so as to enable him to defend himself against it, or to plead an acquittal or conviction in bar of a future prosecution for the same cause. United States v. Britton, 107 U. S. 655, 661, 669 [2 S. Ct. 512, 27 L. Ed. 520]; United States v. Northway, 120 U. S. 327, 332, 334 [7 S. Ct. 580, 30 L. Ed. 664]; Evans v. United States, 153 U. S. 584, 587, 588 [14 S. Ct. 934, 38 L. Ed. 830].

"The general allegation, at the beginning of the count in question, that the defendant, on January 1, 1891, and at divers times between that date and July 8, 1893, being president, director and agent of a certain national banking association, did, as such

president, director and agent, willfully misapply forty thousand four hundred and twenty-two dollars and seventy-nine cents of the moneys, funds and credits then and there belonging to and the property of said association, in the manner following,' is rightly admitted to be insufficient, unless the acts afterwards alleged amount to a willful misapplication of funds of the association, within the meaning of the statute." Batchelor v. U. S. 156 U. S. 426, 15 S. Ct. 446, 39 L. Ed. 478.

To the same effect see Evans v. U. S 153 U. S. 584, 14 S. Ct. 934, 38 L. Ed. 830; Rieger v U. S., 107 F. 916, 47 C. C. A. 61; Donegan v. U. S. (C. C. A.) 296 F. 843.

"The jury were instructed that the fact that Miller received credit in his account on the books of the bank for checks drawn on that bank or on other banks constituted a flagrant misapplication of the funds of the Commercial Bank, within the meaning of section 5209; yet it is apparent that merely giving credit to Miller on the books of the bank for the amount of the checks did not lessen the funds held by the bank, nor in fact defraud the association in any form. To complete a misapplication of the funds of the bank, it was necessary that some portion thereof should be withdrawn from the possession or control of the bank, or a conversion in some form should be made thereof, so that the bank would be deprived of the benefit thereof. It is not necessary in all cases that the money should be actually withdrawn from the bank. Thus if, by connivance between a bank official and a customer of the bank, the latter is allowed to draw checks on the bank, when the drawer has not the funds to meet the checks, and the same are given by the drawer to third parties in payment of claims due them, and the third parties, instead of getting the cash on the checks, have been credited up to their accounts in the bank, this completes the misapplication of the funds of the bank, because the bank has become bound for the payment of the sums thus credited to the third parties, and the result is just the same as though the holders of the checks had obtained the money thereon, and had subsequently deposited it to their credit. In such cases the funds of the bank would be lessened, and thereby criminal misapplication might be completed. If, however, the customer presents the checks himself, and has the same crdited on his account, the crime of misapplication is not completed thereby, because the bank is

not under legal obligation to pay out any of the amounts wrongfully credited to the customer, and may refuse to pay checks drawn against the inflated account, and may at any time charge back against the customer the amounts of the checks upon which nothing was in fact realized by the bank. To complete the criminal misapplication of the bank funds in the supposed case, some sum must be paid by the bank to the customer, or to third parties on his order, or must be credited to third parties under such circumstances that the bank becomes bound for the payment thereof." Dow v. U. S., 82 F. 904, 27 C. C. A. 140.

To the same effect is U. S. v. Martindale (D. C.) 146 F. 280; Prettyman v. U. S., 180 F. 30, 103 C. C. A. 384; Coffin v. U. S., 156 U. S. 432, 15 S. Ct. 394; 39 L. Ed. 481; Coffin v. U. S., 162 U. S. 664, 16 S. Ct. 943, 40 L. Ed. 1109; McCallum v. U. S. 247 F. 27, 159 C. C. A. 245.

I believe these propositions to be sound in principle in addition to having the support of the authorities, and in the instant case it is not sufficient merely to allege that the officer, Johnson, with intent to injure and defraud the bank, did willfully, knowingly, unlawfully, and feloniously misapply by use of credit certain moneys, funds, credits, and property of the said bank.

Turning then to the allegations and averments in support of the general claim of willful misapplication. the allegation is that Johnson, knowing a certain note was absolutely worthless, caused the bank to discount the same, and "that the proceeds of said note, the aforesaid sum of $6,500, was, under the direction of the said Frank H. Johnson, then and there, knowingly, willfully, and in fraud of the said Sioux Falls Trust & Savings Bank, applied to the use, benefit, and advantage of certain persons to the grand jurors unknown and not to the use, benefit, or advantage of the said bank." Whether an offense has thus far been charged depends entirely upon what may be intended by the clause "the proceeds * * * was * * * then and there * * * applied to the use * * * of certain persons." This clause might well be construed to mean that the proceeds of the discounted note were paid in cash out of the bank funds to the certain persons unknown, and, if that was the fact, and was alleged to be the fact, then a misapplication would be alleged. That, however, is merely a possible construction of the word "applied," and not the necsessary one. Fur-

ther, if that were the construction, the offense would be thereby completed without the need of any additional averment, and such construction is impliedly negatived by the fact that additional averments are attempted to be made, which would be both unnecessary and meaningless, if the word "applied" must be construed to mean "paid out in money." Certainly the word "applied" might be used with equal propriety to cover the situation that would arise if the proceeds of the discounted note had been placed on deposit in the Sioux Falls bank to the credit of "ceratin persons unknown," or if the proceeds of said discounted note had been given to "the certain persons unknown" in the form of a draft drawn by the Sioux Falls bank on Minneapolis or Chicago. Under such circumstances the offense of willful misapplication would not be made out until it should be further shown, in the one case, that the deposit credit was either withdrawn or transferred in some way whereby the bank became legally liable for the payment and its funds thereby depleted, and, in the other case, that the draft was in fact presented and paid whereby the funds or credit of the Sioux Falls bank with the drawee bank were depleted. It is entirely manifest, therefore, that the indictment has not thus far definitely alleged or sufficiently established any loss to the Sioux Falls bank or any depletion or withdrawal of its funds, property, or credit by the president, Johnson. The question then arises whether the indictment is aided in this respect by the remaining portion of the charge against Johnson, which is as follows:

"And that thereafter the sum of $6,500 was, through the account of various persons to the grand jurors unknown, withdrawn, and was then and there wholly lost to the said Sioux Falls Trust & Savings Bank, and the money, funds, credits and property of the same were and are depleted in that amount."

It is perfectly apparent that this portion of the indictment can in no wise aid or complete what has gone before, except upon the indulgence of at least three assumptions: First, that the words "applied to the use, benefit, and advantage of certain persons" heretofore noticed must necessarily mean "deposited in the said Sioux Falls bank to the credit of certain persons." Second, that the phrase "various persons to the grand jurors unknown" in the portion of the indictment last above quoted necessarily refers solely to the same persons intended by the phrase "certain

persons to the grand jurors unknown" in the part of the indictment earlier quoted; and, third, that the sum of $6,500 claimed to be withdrawn as specified in the paragraph of the indictment last quoted represented in fact the proceeds of the discounted note earlier mentioned, and was money wrongfully withdrawn, and which would not have been withdrawn but for the discounting of said note. Other than by such inferences the withdrawal of $6,500 from the bank, or the depletion of the bank's funds, as alleged in the portion of the indictment last quoted, is not in any wise connected with any acts of the defendant Johnson previously pleaded. "This important fact is left to mere inference, which is vicious pleading in indictments." U. S. v. Martindale (D. C.) 146 F. 280.

Being of the opinion that the learned trial judge rightly decided that respondent's demurrer must be sustained, I must respectfully dissent from the majority opinion in this case.