# UNITED STATES v. HEINZE.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 380. Argued November 3, 1910.—Decided December 5, 1910.

Where the Circuit Court held the indictment insufficient because the facts alleged did not constitute a crime under the statute as it held that the latter should be construed, this court has jurisdiction of an appeal by the Government under the act of March 2, 1907, c. 2564, 34 Stat. 1246.

Where the indictment charges an officer of a national bank with willful misapplication of funds of the bank, induced by, and resulting in, his advantage, with the illegal intent to injure and defraud the bank by receiving and discounting with its moneys an absolutely unsecured promissory note of a named party whereby the proceeds of the discount of the note were wholly lost to the bank, it sufficiently charges a violation of § 5209, Rev. Stat. It is not necessary to allege conversion by the officer of the bank and also by the recipient of the proceeds of the discount.

A charge that a note for an amount was received for discount which was wholly unsecured and which sum was lost to the bank amounts to a direct allegation that the loss was caused by the discounting.

A right of appeal is not essential to due process of law, *Reetz v. Michigan*, 188 U. S. 505, and neither due process of law nor equal protection of the law is denied to the accused by the act of March 2, 1907, c. 2564, 34 Stat. 1246, giving the Government an appeal to this court under certain conditions from judgments sustaining demurrers to, or motions to quash, indictments because the same appeal is not allowed to the accused in case the demurrer or motion to quash is overruled.

Even if, and not now decided, the equal protection provision of the Fourteenth Amendment apply to the United States, it can have no broader meaning when so applied than when applied to the States; and even if Congress may not discriminate in legislation, it has the power to classify and the classification in the act of March 2, 1907, is well within such power.

161 Fed. Rep. 425, reversed.

THE facts, which involve the validity of an indictment

for misapplication of funds of a national bank under § 5209, Rev. Stat., are stated in the opinion.

*Mr. Assistant Attorney-General Fowler* for the United States:

A brief prepared by the late *Solicitor General, Mr. Lloyd W. Bowers,* was filed for the United States.

No wrongful act or purpose on the part of any other person than the indicted bank officer or agent himself is essential to the offense of willful misapplication of the bank's funds under Rev. Stat., § 5209. *Evans* v. *United States,* 153 U. S. 584, 593, 594; *United States* v. *Corbett,* 215 U. S. 233, 243; *United States* v. *Simmons,* 96 U. S. 360, 364.

The statute reaches misapplication of the bank's funds to the use or for the benefit of others than the bank officer or agent himself. *United States* v. *Britton,* 107 U. S. 655.

It is contrary to the general rule of criminal law and of morality that anybody should be held guilty or innocent by any other test than his own acts and his own intent. *The Coffin cases,* 156 U. S. 432; and 162 U. S. 664; *Putnam* v. *United States,* 162 U. S. 687.

The third person whose note is discounted and to whom the proceeds of the discount are first paid need not be guilty when the indictment alleges that the misapplication is made "for the use, benefit and advantage of" the bank officer and other persons.

The statute does not mention conversion at all; and no act of technical conversion by the bank officer or agent himself is necessary to the offense of willful misapplication of the bank's funds unless the application of such funds by another than the bank, in violation of the official trust or agency and with an actual intent to defraud the bank, is necessarily also a conversion under the common law. The true nature of the offense is clear; and the question

whether it also amounts to a conversion is really unimportant.

The statute itself enumerates the essential elements of the offense which it denounces, to wit: actual misapplication of bank assets from the bank to another which is beyond the true authority of the transferring bank officer or agent; a conscious disregard of his duty to the bank by its officer or agent in making the transfer; an intent on the part of the bank officer or agent who makes the transfer to injure or defraud the bank or somebody else.

If these things coexist, the statute says that the offense is committed. *United States* v. *Fish,* 24 Fed. Rep. 585.

Possession of the misapplied funds by the offending agent of the bank is not requisite. *United States* v. *Northway,* 120 U. S. 327. See also as to indictments for willful misapplication, *Claasen* v. *United States,* 142 U. S. 140; *Batchelor* v. *United States.* 156 U. S. 426; *Agnew* v. *United States,* 165 U. S. 36.

Each of the fifteen counts of the indictment which the Circuit Court condemned charges every element of the statutory offense.

General allegation of the willfulness of the misapplication and of the bank officer's intent to injure or defraud is enough. *Evans* v. *United States,* 153 U. S. 584, 593, 594; *United States* v. *Corbett,* 215 U. S. 233, 243; *United States* v. *Simmons,* 96 U. S. 360, 364.

The misapplication need not be for the use or benefit of defendant himself. *United States* v. *Britton,* 107 U. S. 665, 669; *Coffin* v. *United States,* 156 U. S. 432; and 162 U. S. 664.

Actual loss to the bank is unnecessary. It is enough that the transaction was unauthorized and had an evil purpose when it occurred, though the bank finally receives payment. *United States* v. *Evans,* 153 U. S. 591; *United States* v. *Morse,* 161 Fed. Rep. 429, 435.

Whether or not the statutory offense always involves a

conversion of the bank's property by its unfaithful officer or agent, such conversion is shown by the indictment in this case. *Vasse* v.. *Smith*, 6 Cranch, 226; *Kitchen* v. *Bedford*, 13 Wall. 413; *White* v. *Wall*, 40 Maine, 574; *Laverty* v. *Snethen*, 68 N. Y. 522, 524.

*Mr. John C. Tomlinson* and *Mr. Aldis B. Browne*, with whom *Mr. John B. Stanchfield* was on the brief, for defendant in error:

The pending writ of error is not within the act of March 2, 1907, and should be dismissed. *United States* v. *Keitel*, 211 U. S. 370, does not apply; and see *United States* v. *Stevenson*, 215 U. S. 190, 195.

Under the act of March 2, 1907, the right of review in this court is conferred upon the plaintiff—the United States—alone in cases involving construction of the Federal laws, while denying it to the defendant in every form and at every stage of the case where not involving a capital crime. The right is wholly unilateral. It opens the doors of this court to the United States as one party to the cause only, and denies the same privilege to the defendant. This is not due process of law under the Fifth Amendment. *The Sinking Fund*, 99 U. S. 700; *Murray* v. *Hoboken Land Co.*, 18 How. 272, 278; *Holden* v. *Hardy*, 169 U. S. 366, 391; *People* v. *King*, 110 N. Y. 418; *Chicago Ry. Co.* v. *Moss & Co.*, 60 Mississippi, 641, 646.

The act of March 2, 1907, is inoperative in so far as it seeks to confer upon the United States alone the right of review of questions which the defendant may not at any stage of his case bring before this honorable court for final hearing and judgment. Where the United States seeks to assert such an exclusive privilege there is necessarily denial of "due process of law."

The contention *contra* is aided by the language of Art. III of the Constitution.

Nor is the privilege to be thus given to the United

States upon any idea that as sovereign the Government may enjoy such opportunity of review which is denied to the defendant. That is obnoxious to every principle of justice and fair dealing.

This court has not jurisdiction of this appeal as the court below did not attempt to construe, nor did it construe, § 5209, Rev. Stat. The opinion does not discuss the statute, but the indictment as a pleading, and finds that it was insufficient as there was no allegation in the counts stating to whom the proceeds of the discount were actually paid by the bank; there was no allegation in the counts stating to whom the demand notes were payable; no statement that payment of the notes had ever been demanded; that the notes had not been paid or that the makers were in default; that the loss to the bank was due to the discounts; or that the makers of the notes were then, or at the time of the discounts, insolvent or unable to pay their obligations.

Omissions in an indictment cannot be supplied by intendment or implication, and where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth. *United States* v. *Hess,* 124 U. S. 483; *Pettibone* v. *United States,* 148 U. S. 197; *Ledbetter* v. *United States,* 170 U. S. 606; Morse on Banks, 4th ed., 138, 139–162; *Pape* v. *Capitol Bank,* 20 Kansas, 440; *Atlantic State Bank* v. *Sereny,* 18 Hun, 36; *Tracy* v. *Tallmage,* 18 Barb. 462; *Merritt* v. *Todd,* 23 N. Y. 28.

No action for conversion would lie against the "recipient of the discount proceeds," for nowhere is it alleged who the recipient of the discount proceeds was, and a conversion can only arise where there is an unlawful taking; or, if the original taking were lawful, an unlawful detention.

If it be assumed that the court did construe § 5209, the construction is correct. *United States* v. *Britton,* 107 U. S. 665; *United States* v. *Northway,* 120 U. S. 327; *Evans* v.

*United States,* 153 U. S. 584; *Coffin* v. *United States,* 156 U. S. 432, all sustain the court below to the effect that "conversion" is an essential element of the offense; and on this point see *United States* v. *Fish,* 24 Fed. Rep. 585, 587; *United States* v. *Harper,* 33 Fed. Rep. 471, 473; *United States* v. *Youtsey,* 91 Fed. Rep. 864, 866; *Jewett* v. *United States,* 100 Fed. Rep. 832, 837; *United States* v. *Eastman,* 132 Fed. Rep. 551, 552; *Geiger* v. *United States,* 162 Fed. Rep. 844, 847; *United States* v. *Martindale,* 146 Fed. Rep. 281, 289; *Fleckinger* v. *United States,* 150 Fed. Rep. 1, 2; *Dickson* v. *United States,* 159 Fed. Rep. 801.

The established construction of statutes by officers charged with proceeding under them, is entitled to respect. *United States* v. *Carll,* 105 U. S. 611; *Keck* v. *United States,* 172 U. S. 434; *United States* v. *Evans,* 153 U. S. 587; see *Dunbar* v. *United States,* 156 U. S. 185, 190; *Walrod* v. *Ball,* 9 Barb. 271, 276; *Potter* v. *Merchants' Bank,* 28 N. Y. 641, 655.

There is no allegation of insolvency, and as it is the law that solvency is to be presumed, the indictment is bad and under *MacKnight* v. *United States,* 115 Fed. Rep. 972, 984, the bank received upon the discount "a good note" which the makers "could be made to pay."

Such words as "fraud," "conspiracy," "with intent to defraud," "corruptly" and words of similar import, cannot be used as predicating criminality of facts which in themselves show no criminality. *Ambler* v. *Choteau,* 107 U. S. 586; *United States* v. *Des Moines Co.,* 142 U. S. 544; *Batchelor* v. *United States,* 156 U. S. 426; *United States* v. *Eno,* 56 Fed. Rep. 218, 220.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This is a writ of error directed to review the ruling of the Circuit Court upon a demurrer to an indictment against defendant in error.

The indictment contains sixteen counts, charging him with willful misapplication of funds of the Mercantile National Bank of New York city, in violation of § 5209 of the Revised Statutes. The demurrer was sustained as to fifteen counts, and the United States has brought the case here by virtue of the act of March 2, 1907, c. 2564, providing for writs of error in certain instances in criminal cases, among which instances is a decision or judgment sustaining a demurrer to an indictment, "where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment is founded." 34 Stat. 1246.

The averments of the first count may be taken as an example of all. It averred that Heinze was the president of the bank, and that by "virtue of his official relation to it as its president, and by virtue of the power of control, direction and management," which as president he had over its moneys, funds and credits, he "willfully, wrongfully, unlawfully and with intent to injure and defraud" it "and divers others persons to the grand jurors unknown," and without the knowledge and consent of it or of its board of directors and committees, for his use and benefit and advantage, and of other persons to the grand jurors unknown, misapplied certain of its moneys, funds and credits, to wit, the sum of $100,000, by receiving and discounting with its moneys, etc., a certain promissory note (the names of the drawers being given) for the sum of $100,000, payable on demand, and which note when so received and discounted "was not then and there well secured, and, in fact, was not secured at all," which fact he knew, and which amount, it being the proceeds of the discount of the note, was wholly lost to the bank.

The other counts charge the misapplication of the funds of the bank in the same way, the amounts and makers of the notes discounted being different. And it is alleged of some of them, not that they were not secured at all, but

that they were at the time of discount "not well secured."
A total loss to the bank of the respective amounts is
alleged.

The demurrer is almost as voluminous as the indict-
ment. It alleges defects and uncertainties, and even re-
pugnances in the indictment. In the brief of counsel
emphasis is given to the following: That there is no allega-
tion to whom the proceeds of the discount were paid by
the bank, nor to whom the notes were payable; that there
is no statement that payment of the notes had been de-
manded, or that they had not been paid, or that the
makers were in default, or that the loss to the bank was
due to the discounts, or that the makers of the notes were
then or at the time of the discounts insolvent or unable
to pay their obligations.

The Circuit Court sustained the demurrer to the first
fifteen counts.

Section 5209, the section for the violation of which the
indictment was found, is part of the provisions for the
regulation of national banking associations, and provides
as follows: "Every president, director  .  .  .  or agent
of any association who  .  .  .  willfully misapplies any
of the moneys, funds or credits of the association  .  .  .
with intent  .  .  .  to injure or defraud the associa-
tion  .  .  .  or any individual person, and every person
who with like intent aids or abets any officer  .  .  .  in
any violation of this section, shall be deemed guilty of a
misdemeanor."

For its general reasons in support of its ruling on the
demurrer the court referred to its opinion in *United
States* v. *Morse*, 161 Fed. Rep. 427, and to the views
expressed on the first indictment against defendant.
161 Fed. Rep. 425. As to the pending indictment, it was
said:

"This indictment seems to me to charge in counts 1–15
this and no more, viz., that with intent to defraud the

bank, of which he was president, and for the benefit of himself and others unnamed, defendant caused the bank to discount single name commercial paper and the bank lost the amount paid on the discount."

And it was further said:

"The crime of which the defendant is guilty, if guilty at all, is 'willful misapplication.' The one characteristic or essential of this crime, on which the Supreme Court has always insisted, is conversion; no method of being guilty without converting the money, funds or credits of the bank has been pointed out. This word 'conversion' has supplied the legal measure which the court has not been able to find in 'willful misapplication.'

"If the facts stated in an indictment do not set forth a case of conversion, the indictment is bad, and a general allegation of wrongful intent will not cure it.

"Taking the first count, for example, could the bank have maintained an action for conversion against the recipient of the discount proceeds under the facts stated? I think not, and am therefore of opinion that counts 1–15 are demurrable."

It is contended by defendant that the ruling of the Circuit Court was not a construction of § 5209, Rev. Stat., but only a determination of the sufficiency of the indictment, and that the writ of error should be dismissed. We are unable to concur in that view. The court expressly ruled that the crime of which the defendant was guilty, if guilty at all, was "willful misapplication," and that the essential ingredient of that is "conversion," and made so by the statute. And not only conversion by the officers of the bank, but by the person receiving the proceeds of the discount. The indictment was held insufficient because the facts alleged in it did not constitute such double conversion, that is, it did not constitute a crime under the statute as the latter should be construed. The motion to dismiss is, therefore, denied.

We are, therefore, brought to the merits, and the first contention of defendant (and for convenience in discussion we use his contentions rather than those of the United States, although the decision below was against the latter), is that if the Circuit Court did consider the statute its construction was correct.

A willful misapplication of the funds of a bank is the essence of the crime, it is urged, and that the decision of this court has defined what constitutes a willful misapplication and that the facts alleged in the indictment do not fulfill the definition. The following cases are cited to sustain the contention: *United States* v. *Britton,* 107 U. S. 665; *United States* v. *Northway,* 120 U. S. 327; *Evans* v. *United States,* 153 U. S. 548; *Coffin* v. *United States,* 156 U. S. 432, and certain cases in the Circuit Courts and Circuit Courts of Appeals.

Before examining these cases it will be well to revert to the averments of the indictment to see what exactly it charges. It charges that the defendant was the president of the bank and as such, having control of and possession of its funds, willfully, wrongfully, unlawfully, and with intent to injure and defraud it, and, for his use, benefit and advantage, misapplied certain of its funds. A willful misapplication of the funds of the bank is charged and that it was induced by and resulted in a benefit and advantage to defendant. This is a direct accusation of wrongdoing through his office, and the precise manner by which it was accomplished is averred to have been with the illegal intent to injure and defraud the bank by receiving and discounting with its moneys an absolutely unsecured promissory note of a named partnership, whereby the proceeds of the discount of the note were wholly lost to the bank.

We may now turn to the cases. In *United States* v. *Britton,* 107 U. S. 655, it was decided that the "misapplication made an offense by this statute means a misappli-

cation for the use, benefit or gain of the party charged, or some one other than the association. And further, that to constitute the offense "there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged."

The *Britton case* was referred to in *United States* v. *Northway*, 120 U. S. 327, as holding that it was of the essence of the criminality of the misapplication that there should be a conversion of the funds to the use of the defendant or of some person other than the association, with intent to injure or defraud the association. This case has further instruction. It makes a distinction between embezzlement and a willful misapplication of the funds. There may be a willful misapplication of the funds, it is said, even though the officer have not the actual possession of them. He may have such control and power of management "as to direct an application of the funds in such manner and under such circumstances as to constitute an offense." A count in an indictment was sustained which charged the misapplication to have been made by causing funds to be paid out to the use and benefit of the officer indicted in an unauthorized and unlawful purchase of the shares of stock of certain stock companies, without the knowledge and consent of the association, and with intent to injure it.

*Evans* v. *United States*, 153 U. S. 584, 592, was also a case of alleged violation of § 5209, where the sufficiency of an indictment was considered. Evans was indicted for aiding and abetting the cashier in a willful misapplication of the funds of the bank. The misapplication was described to be the unlawful receiving and discounting with the money and funds of the bank with intent to defraud the bank, and for the use, etc., of Evans, a note made by Evans, which when so discounted "was not then and there well secured," which he and the cashier well knew, and which note was never paid, by reason of which the bank suffered

loss in that amount, with intent in Evans to injure and defraud the bank. It was said:.

"While the mere discount of an unsecured note, even if the maker and the officer making the discount knew it was not secured, would not necessarily be a crime, if the maker believed that he would be able to provide for it at maturity; yet if his original intent was to procure the note to be discounted in order to defraud the bank, as charged in this count, every element of criminality is present. . . . The criminality really depends upon the question whether there was, at the time of the discount, a deliberate purpose on the part of the defendant to defraud the bank of the amount. . . . No averment was necessary that such discount was procured by fraudulent means, since the offense consisted not in the use of fraudulent means, but in the discount of a note which both parties knew to be unsecured with intent thereby to defraud the bank. An averment that Evans was at the time insolvent, or knew himself to be so, was also unnecessary in view of the allegation that Evans knew that the note was unsecured, and procured the same to be discounted with intent to defraud the bank."

It was said that weight must be given to the words "knowingly, willfully and unlawfully and fraudulently" and "to the general allegation of an attempt to defraud." Pages 592 and 593.

In *Coffin* v. *United States*, 156 U. S. 432, the crime of the misapplication of funds was again considered. One of the contentions of the defendant was that certain counts in the indictment were insufficient, because they failed to aver the actual conversion of the sum misapplied to the use of any particular person. The proposition that the law required an actual conversion was yielded to, and that there must be an averment of it. The indictment was considered and held sufficient, as it described the conversion to consist of paying money out of the funds of the

bank to a designated person when that person was not entitled to take the funds, and that, owing to the insolvency of such person, the money was lost to the bank.

These cases established that there must be, to constitute a misapplication of the funds of the bank, a conversion, but it may be by the officer alone. The words of *United States* v. *Britton* are that "there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged." And this is repeated in *United States* v. *Northway*, The language of the *Britton case* is repeated in the *Evans case*, but it was said that the offense consisted not in the use of fraudulent means, but in the discount of a note which both parties knew to be unsecured, with the intent to defraud the bank. In *Coffin* v. *United States*, conversion of the funds was again recognized as necessary to constitute the offense. In that case the willful misapplication was alleged to have been done "with intent to convert the same to the use of the Indianapolis Cabinet Company," whose check was paid, though it had no funds in the bank. And such averment, it was said, stated the misapplication and actual conversion of money by the methods described, that is to say, by paying it out of the funds of the bank to a designated person when that person was not entitled to take the funds, and that owing to the insolvency of such person the money was lost to the bank. And in the same case, in 162 U. S. 664, 669, it is said that "the primary object of the statute was to protect the bank from the acts of its own servants."

It follows from these citations that the Circuit Court erred in considering as necessary, not only that there should be alleged a conversion by the officer of the bank, but also by the recipient of the proceeds of the discount. The conversion may be to the use of either, and the indictment fulfills the requirement. It charged that Heinze, being president of the bank and having control of its

funds, with intent to injure and defraud it received and discounted the note of $100,000, knowing that it was not secured at all, and which was wholly lost to the bank. And it was charged this was done for his "use, benefit and advantage." This charges a conversion as explicitly as it was charged in *Coffin* v. *United States*, 156 U. S. 432, "that is to say," to quote the language of that case, "by paying money out of the funds of the bank to a designated person when that person was not entitled to take the funds," with the consequence that the money was lost to the bank. And it was fairly inferable (to answer certain of the objections made by defendant) that the proceeds of the discount were actually paid by the bank and to whom paid, and that payment had been demanded and not made. It is more than an inference that the loss to the bank was due to the discounts. The charge that the bank officer received for discounting a note for $100,000, which was wholly unsecured, and which sum was lost to the bank, is quite a direct way of saying that the loss was caused by the discounting. And the statement would receive very little strength or the act of the officer any additional degree of culpability by an allegation that the makers of the note were insolvent, the element which the Circuit Court found in count 16, and which induced it to sustain that count.

It is contended by the defendant that the act of March 2, 1907, is not applicable to the case, because the right it offers is "wholly unilateral." "It opens the door of this court," it is said, "to the United States as one party to the cause only, and denies the same privilege to the defendant." The ultimate contention is that defendant is thereby denied the equal protection of the laws. This inequality is asserted because the United States is given an appeal to this court, and before trial, and a defendant is only given right of review in the Circuit Court of Appeals, and only at the end of the trial. The defendant is

put to expense and peril, it is urged, though the indictment against him may be wholly bad, "and is at every stage of the case forbidden the right of review upon any question in the Supreme Court, except the construction or application of the Constitution or the constitutionality of any Federal statute." And this, it is insisted, is the denial of due process of the law as well as the denial of the equal protection of the laws. We shall not follow the somewhat round about argument to establish the identity of those two rights. If we should yield to the argument it would necessarily follow that if defendant has not been denied due process he has not been denied the equal protection of the law, and this court has decided that the right of appeal is not essential to due process of law. *Reetz* v. *Michigan,* 188 U. S. 505, 508. The provisions have definite application, and even if the explicit clause of the Fourteenth Amendment, forbidding a State to deny to any person within its jurisdiction the equal protection of its laws, can be said to apply to the United States, it can have no broader meaning when so applied than when applied to the States. Assuming, therefore, and assuming only, not deciding (see *District of Columbia* v. *Brooke,* 214 U. S. 138, 149) that Congress may not discriminate in its legislation, it certainly has the power of classification, and the act of March 2 is well within such power.

*Reversed and remanded for further proceedings in conformity with this opinion.*