## CRAIG v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. April 9, 1925.)

No. 4350.

Banks and banking ⊚⇒257(1) — Indictment against officer held not to charge misapplication of funds.

An averment, in an indictment against an officer of a national bank, that a fund to his credit in a special account was transferred to his general account and applied on an overdraft, *held* not to state facts constituting a willful misapplication of funds of the bank, under Rev. St. § 5209, as amended September 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772); no loss to the bank or depletion of its funds being shown.

In Error to the District Court of the United States for the District of Montana; Charles N. Pray, Judge.

Criminal prosecution by the United States against William T. Craig. Judgment of conviction, and defendant brings error. Reversed, with instructions.

Sterling M. Wood, of Billings, Mont., for plaintiff in error.

John L. Slattery, U. S. Atty., and W. H. Meigs, Asst. U. S. Atty., both of Helena, Mont., and Francis A. Silver, Asst. U. S. Atty., of Butte, Mont., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The indictment in this case contained eight counts. The court withdrew the even numbered counts from the consideration of the jury and the latter returned a verdict of guilty as to count 1, but not guilty as to counts 3, 5, and 7. The first count was based on section 5209 of the Revised Statutes, as amended by the Act of September 26, 1918 (40 Stat. 972 [Comp. St. Ann. Supp. 1919, § 9772]). The section as amended provides that any officer, director, agent, or employee of any Federal Reserve Bank or of any member bank, who embezzles, abstracts, or willfully misapplies any moneys, funds, or credits of such Federal Reserve Bank or member bank, with intent to injure or defraud such Federal Reserve

Bank or member bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such Federal Reserve Bank or member bank, or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such Federal Reserve Bank or member bank, or the Federal Reserve Board, shall be guilty of a misdemeanor.

The count now in question purports to charge a misapplication of funds, moneys, and credits within the meaning of this section. The facts relied upon to show the misapplication are these: Craig was president of the First National Bank of Ingomar, Mont. In his official capacity, as president, he borrowed from the First National Bank of Forsyth the sum of $800, for which he executed the note of the Ingomar Bank, securing the payment of the note by a deposit of securities belonging to the Ingomar Bank. The $800, thus obtained, was deposited in the Ingomar Bank in an account headed, "W. T. Craig, Special." Thereafter this special account was transferred to the general account of Craig, and the $800 was applied on his overdraft in the bank amounting, at the time, to the sum of $1,800. No money was withdrawn from the bank, and the only injury to the bank, if any, was the transfer of the special account to the general account and an appropriate reduction of the overdraft of Craig from $1,800 to $1,000. The question presented is: Was this a misapplication of funds within the meaning of the statute?

In United States v. Britton, 107 U. S. 655, 666, 2 S. Ct. 512, 522 (27 L. Ed. 520), the term "misapplication" is defined as follows:

"We think the willful misapplication made an offense by this statute means a misapplication for the use, benefit, or gain of the party charged, or of some company or person other than the association. Therefore, to constitute the offense of willful misapplication, there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged."

To the same effect, see United States v. Northway, 120 U. S. 327, 7 S. Ct. 580, 30 L. Ed. 664; Evans v. United States, 153 U. S. 584, 14 S. Ct. 934, 38 L. Ed. 830; Coffin v. United States, 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481; United States v. Heinze, 218 U. S. 532, 31 S. Ct. 98, 54 L. Ed. 1139, 21 Ann. Cas. 884.

In Dow v. United States, 82 F. 904, 27 C. C. A. 140, the Circuit Court of Appeals for the Eighth Circuit said:

"In the several counts in the indictments charging a misapplication of the funds of the Commercial National Bank it is averred that the misapplication was made with the intent to injure and defraud the association, meaning the national bank, and it is clear, under the ruling of the Supreme Court in the cases just cited, that the charges of misapplication contained in these indictments could not be made out unless it appeared that the funds of the bank had been depleted, withdrawn, or diminished in some form by reason of the action of Dow, aided and abetted by McClurken and Miller. The jury were instructed that the fact that Miller received credit in his account on the books of the bank for checks drawn on that bank or on other banks constituted a flagrant misapplication of the funds of the Commercial Bank, within the meaning of section 5209; yet it is apparent that merely giving credit to Miller on the books of the bank for the amount of the checks did not lessen the funds held by the bank, nor in fact defraud the association, in any form. To complete a misapplication of the funds of the bank, it was necessary that some portion thereof should be withdrawn from the possession or control of the bank, or a conversion in some form should be made thereof, so that the bank would be deprived of the benefit thereof. It is not necessary in all cases that the money should be actually withdrawn from the bank. Thus if, by connivance between a bank official and a customer of the bank, the latter is allowed to draw checks on the bank, when the drawer has not the funds to meet the checks, and the same are given by the drawer to third parties in payment of claims due them, and the third parties, instead of getting the cash on the checks, have them credited up to their accounts in the bank, this completes the misapplication of the funds of the bank, because the bank has become bound for the payment of the sums thus credited to the third parties; and the result is just the same as though the holders of the checks had obtained the money thereon, and had subsequently deposited it to their credit. In such cases the funds of the bank would be lessened, and thereby the criminal misapplication might be completed. If, however, the customer presents the checks himself, and has the same credited on his account, the crime of misapplication is not completed thereby, because the bank is not under legal obligation to pay out any of the amounts wrongfully credited to the customer, and may refuse to pay checks drawn against the inflated account, and may at any

time charge back against the customer the amounts of the checks upon which nothing was in fact realized by the bank. To complete the criminal misapplication of the bank funds in the supposed case, some sum must be paid by the bank to the customer, or to third parties on his order, or must be credited to third parties under such circumstances that the bank becomes bound for the payment thereof. If the jury had been instructed that, if the evidence showed that Dow, as president of the bank, had knowingly permitted Miller's account with the bank to be inflated by crediting him with large amounts of false or fictitious checks, or checks drawn by parties who had no funds in the bank against which to draw, and Dow had furnished Miller with certified checks on the Commercial Bank, or had otherwise permitted him to draw large sums from the bank, so that in fact the funds of the bank had been depleted or withdrawn, and this was done under circumstances showing an intent on part of Dow to defraud the bank by thus allowing its funds to be depleted, a case of misapplication of the funds, within the meaning of the statute, had been made out, no just exception could have been taken thereto. The positive instruction, however, that merely crediting up on Miller's account the checks in question amounted to a misapplication of the funds of the bank, within the meaning of the statute, was clearly contrary to the construction placed on the statute by the Supreme Court, and we are compelled, therefore, to sustain the exceptions taken to the several parts of the charge, wherein it was stated that the reception and crediting of the checks on Miller's account constituted a violation of the statute."

Again, in McCallum v. United States, 247 F. 27, 159 C. C. A. 245, the same court said:

"A consideration of the various counts has convinced that the first count charging the misapplication of the $227 cannot be sustained because it contains no averment that the credit of $227 which it avers that McCallum took with the bank ever injured the bank or caused it any loss. There is no allegation in the count that he ever checked this money out of the bank, or that the bank in any way was deprived of it."

Donegan v. United States, 296 F. 843, from the Circuit Court of Appeals for the Fifth Circuit, may seem in conflict with the decisions from the Eighth Circuit. It was there said:

"A deposit to one's credit in a bank of checks is a means of bringing about the withdrawal of the amounts of the checks from the balances to the credit of the makers thereof and placing such amounts to the credit of the depositor. An amount to the credit of one bank depositor may be abstracted as a result of his checks being deposited to the credit of another depositor. The allegations charge the doing of acts ordinarily having the result of transferring credits from one or more depositors to another. We think that each of the counts sufficiently shows how the alleged abstraction or misapplication was effected, that they could be so effected; and that error was not committed in overruling the demurrers to those counts."

But the indictment in the latter case charged that the money was abstracted from and was wholly lost to the bank. Furthermore, if the mere transfer of funds from one account to another subject to check amounts to a misapplication, which is questionable at best, that rule can have no application here, because the balance in the special account was simply credited on the overdraft in the individual account, leaving nothing in the latter account subject to check or other withdrawal. Again, the government does not claim that the mere deposit of the money in the special account amounted to a misapplication. It relies entirely upon the transfer of the fund from the special account to the general account. The reason for this is obvious; for, had the government relied upon the deposit in the special account as a misapplication, it was met with the objection that its own testimony showed clearly and beyond controversy that the deposit in the special account was so made without the knowledge or consent of the plaintiff in error.

For these reasons, we are of opinion that the bank has suffered no loss; that the plaintiff in error has gained nothing by the transaction except a mere paper credit of $800, to which he was not entitled; and that there has been no misapplication of any moneys, funds, or credits belonging to the bank.

The indictment therefore does not support the judgment, and for that reason the judgment must be reversed, with instructions to quash the indictment. It is so ordered.