## WHERRELL v. UNITED STATES. *

Circuit Court of Appeals, Eighth Circuit.
March 24, 1927.

No. 7522.

Banks and banking ☞256(3)—Employee, who converted proceeds of checks sent bank for collection, held chargeable with misapplication of "funds of the bank" (Rev. St. § 5209, as amended by Act Sept. 26, 1918 [Comp. St. § 9772]).

Collection teller of a member bank of the Federal Reserve System, who, as such, received checks and drafts sent to the bank for collection and credit or remittance, and who, after collection, failed to credit or remit the proceeds, but converted the same to his own use *held* chargeable with misapplication of funds, under Rev. St. § 5209, as amended by Act Sept. 26, 1918 (Comp. St. § 9772); such proceeds, when collected, being "funds of the bank."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Funds of a Bank.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

*Rehearing denied May 28, 1927.

Criminal prosecution by the United States against Charles Orta Wherrell. Judgment of conviction, and defendant brings error. Reversed in part, and affirmed in part.

Austin M. Cowan, of Wichita, Kan. (Chester I. Long, J. D. Houston, Claude I. Depew, James G. Norton, W. E. Stanley, and W. B. Harms, all of Wichita, Kan., on the brief), for plaintiff in error.

Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan. (Al F. Williams, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The parties will be referred to as they appeared in the court below. The defendant was indicted for violation of section 5209, Rev. St., as amended by Act Sept. 26, 1918 (40 Stat. 972 [Comp. St. § 9772]). There were 12 counts in the indictment; all are practically the same, except that in some of the counts he was charged with failing to remit, and in others failing to credit the remitter with the checks and drafts on their accounts with the bank, as directed in the letters of transmission. It is therefore only necessary to set out the first count to understand the issues involved.

After setting out the jurisdictional allegations, and that he was an employee of the Commercial National Bank of Kansas City, Kan., a member of the Federal Reserve Bank, as collection teller, and as such had control, direction, and management of the moneys, funds and credits of said bank, knowingly, willfully, and feloniously "and with the intent to injure and defraud the said member bank, its board of directors, and committees, and for the use, benefit, and advantage of himself, the said Charles Orta Wherrell, misapply certain money, funds, and credits of said member bank, to wit, the sum of four hundred and three dollars and ninety-two cents ($403.92) of the moneys, funds, and credits of the said member bank, a further description whereof is to the grand jurors unknown, in the manner and by the means following, that is to say: That he, the said Charles Orta Wherrell, then and there being such collection teller and employee of said member bank, as aforesaid, did on or about the 12th day of December, A. D., 1922, receive from one William Blodgett, his check No. 121, dated November 29, 1922, drawn on the Fidelity State Bank of Kansas City, Kansas, and drawn to the order of Orta Wherrell, which said check was then indorsed by said Orta Wherrell and delivered to said collection department of said member bank and its collection teller, and was cashed on said December 12, 1922. Said check so received from said William Blodgett as aforesaid was in settlement for rents collected by said Blodgett for one Mrs. J. A. (Hattie) Lane and was received by said Wherrell, collection teller of said member bank, as aforesaid, for the account of said Mrs. J. A. (Hattie) Lane, but no remittance of the proceeds of said check were made to said Mrs. J. A. (Hattie) Lane nor was said proceeds credited to her account in said member bank in said sum of four hundred and three dollars and ninety-two cents ($403.92), but said sum of $403.92 were willfully and unlawfully misapplied by said Charles Orta Wherrell and appropriated to his own use and benefit."

Defendant demurred to each count. The demurrer to the fourth count was sustained, and to the 11 other counts overruled. The contention of counsel is that the moneys and funds, charged in the indictment to have been misappropriated by the defendant, were not the moneys or funds of the bank, but of the individuals who remitted the checks to the bank for collection and credit or returns.

As the checks and drafts set out in the different counts were sent to the bank for collection and credit or remittance, upon a failure to do so, when collected by an employee and appropriated by him, the loss falls on the bank, as it is liable for the misappropriation of the funds by its employees. The checks when collected were the funds of the bank, and it became the debtor of the remitter until paid. Evans v. United States, 153 U. S. 589, 14 S. Ct. 934, 38 L. Ed. 830; Coffin v. United States, 162 U. S. 664, 16 S. Ct. 943, 40 L. Ed. 1109; United States v. Heinze, 218 U. S. 532, 31 S. Ct. 98, 54 L. Ed. 1139, 21 Ann. Cas. 884; Spencer v. United States, 169 F. 562, 566; Norton v. United States, 205 F. 593, 597; Matters v. United States, 261 F. 826, 831, the three last cited cases decided by this court.

Spencer v. United States, supra, was a case similar to this. The defendant in that case, being a collector of a bank, had appropriated to his own use funds collected by him as such employee. The same contention made in the instant case was made there. Judge Adams, delivering the opinion of this court, said: "In making the collection he was clearly acting as agent for the bank, and his duty as such agent was to report and deliver the full amount collected to his principal.

As between him and the bank the money undoubtedly belonged to the latter, and any appropriation of it was the appropriation of the money of the bank."

United States v. Britton, 107 U. S. 655, 2 S. Ct. 512, 27 L. Ed. 520, relied on by counsel, has no application to the facts charged in the indictment in the instant case. In that case Britton had purchased stock of the bank, of which he was president, with funds of the bank and held the stock in trust for the bank, so that the bank had not been deprived of the benefit of the purchase. This it was held was neither embezzlement, nor misapplication of funds, as there was no intent to defraud the bank. The court committed no error in overruling the demurrer to the 11 counts.

The evidence is practically undisputed. It establishes that the checks and drafts set out in the different counts were sent to the bank and not to him; that it was his duty, as collecting teller, to collect them, and, when collected, to transmit the proceeds to the sender in the bank's exchange, or, if a depositor of the bank, to credit them to the sender's account, as directed in the letter of transmission; that, instead of doing so, he appropriated the funds to his own use, by placing them in an envelope in a safe for keeping papers for the bank's customers. Nobody could touch it there but he. He neither transmitted nor placed the funds collected by him on the checks and drafts set out in the 11 counts of the indictment, to their credit on the books of the bank. It is unnecessary to set out all the evidence, as the defendant's admissions made to Mr. Brokaw, the president, and Mr. Bjorkman, the cashier of the bank, establish his guilt. Mr. Bjorkman in effect testified that the bank received by wire an inquiry about a certain collection. He asked the defendant about it, and he replied he had remitted for it yesterday. "I asked him to wire an answer to that effect, and he answered, 'No.' I then told him to send the wire. After he left I examined the carbon copy of the wire he sent, and it stated remitted that day. Before receipt of the inquiry by wire, I had asked him when he wanted his vacation, and he replied he would talk it over with his wife and let me know the next day. The next day I asked him about his vacation, and he replied he hadn't spoken to his wife about it. That day the bank had an inquiry about another collection on Mr. Henderson, which had not been remitted. I called Mr. Henderson and escorted him to the defendant. At first he said he didn't remember it. Mr. Henderson stated he had paid the draft by his check. I asked Wherrell to give me the check. He fumbled among his papers, and then said: 'Dave, you've got me. I am a thief.' I then told him to go with me to Mr. Brokaw. I told Mr. Brokaw that Mr. Wherrell had something to say to him. He told Mr. Brokaw: 'I have taken some money.' In reply to how much, he said: 'In the neighborhood of $34,000. I have about $18,000 of it in the bank.' In a few minutes an envelope containing about that sum was laying on the table. I counted the money, and it amounted to $18,270.95. He produced a slip, which the witness identified, containing a list of items furnished by defendant and which he had not remitted for."

Mr. Brokaw testified in effect that Mr. Bjorkman came into the director's room with Mr. Wherrell, saying: "Mr. Wherrell has a statement he wants to make to you." "I asked him what it was, and Wherrell said: 'I have taken the funds of the bank.' 'How much?' I asked. 'About thirty-four odd thousand dollars.' I asked, 'What have you done with it?' He said, 'Part of it is in the book vault, in an envelope with my name on it, about eighteen thousand and odd dollars.' I went into the vault with him and brought the package to the room and it contained $18,280. He then went to an adding machine and from some memoranda produced from his pocket made out a list of money taken by him, showing a total of $34,772.83.

Evidence as to each of the collections charged in the 11 counts was introduced. The defendant did not testify. The only witness introduced in his behalf was Mr. Wright, who claimed to be a public accountant. He testified that he had examined the books of the bank kept by the defendant, and in his opinion it was impossible for the defendant to have misappropriated any of the items charged. On cross-examination he stated that the records show the collections had been made by him, but he had not charged himself with them. The jury evidently disregarded his testimony, and in our opinion properly.

Learned counsel in his able argument did not go into the facts, but relied entirely on the same grounds presented on the demurrer to the indictment. He claimed that the acts shown constitute the crime of embezzlement, with which he is not charged, and not a misapplication of funds, as charged. The act of Congress includes both, "embezzles, abstracts, or willfully misapplies any moneys, funds," etc. It may be that the acts charged and proved may also constitute embezzle-

ment, but they clearly constitute willful misapplication of funds.

In addition to the authorities cited hereinbefore, we refer to the charge of Circuit Judge Jackson, later a Justice of the Supreme Court, in United States v. Harper (C. C.) 33 F. 471, 478. He defined willful misapplication of funds as employed in section 5209, Rev. St., as: "The willful misapplication which is made a criminal offense by that section of the statute means a misapplication knowingly and designedly made by the officer charged, for his own use and benefit; or for the use and benefit of some person or company other than the association whose funds, moneys, or credits are taken."

It is also claimed that the statute does not make it an offense to fail to remit. But willfully misappropriating the money collected for the bank, to his own use, is within the letter of the statute, and that is what the defendant is charged with.

Error is claimed in the charge to the jury as to what constitutes willful misapplication. Counsel quotes only a part of the charge on that question. Taking the entire charge on that subject, and a charge to the jury must be construed in its entirety, it was clearly correct.

The evidence on the first and second counts was insufficient to show that the amounts collected were for the bank, but establishes that they were collected for the benefit of the owners. But, as the sentences of imprisonment on all counts are concurrent, this does not affect the result, but only affects the fine imposed on the first count. The sentences on these two counts will therefor be set aside, and on all other counts the judgment is affirmed.