**UNITED STATES v. CAPLAN.**

No. 13609.

United States District Court
W. D. Pennsylvania.
Aug. 13, 1954.

Edward C. Boyle, U. S. Atty., W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Elliott W. Finkel, Maurice Baruth, Pittsburgh, Pa., for defendant.

MURPHY, District Judge.

Defendant found guilty by verdict of a jury on five counts of wilful misapplication, 18 U.S.C.A. § 656, Id. § 2,[1] moves in arrest of judgment and for a new trial. As to the former, defendant argues that the indictment does not charge an offense;[2] as to the latter, that the verdict is against the law, against the evidence, the court erred in ruling on defendant's points for charge, in excluding evidence, and in the conduct of the trial.

For present purposes the motion in arrest of judgment must be decided upon the record, i. e., the indictment, the not guilty plea, and the verdict.[3] See 18 U.S.C.A. Fed.Rules Crim.Proc. rule 34; United States v. Zisblatt, 2 Cir., 1949, 172 F.2d 740; United States v. Bradford, 2 Cir., 1952, 194 F.2d 197, at

---

1. Not guilty on one count of making false entries. 18 U.S.C.A. § 1005, Id. § 2.

2. A pre-trial motion to quash the indictment for the same reason was denied.

3. And see United States v. Bianco, D.C. W.D.Pa., 103 F.Supp. 867. Except as to details, the present indictment and that in United States v. Tornabene, D.C., 123 F.Supp. 869 and in United States v. Pihakis, 123 F.Supp. 859, follow the same pattern. Our opinion here will pro tanto be dispositive of similar motions in those cases.

page 201, certiorari denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371; United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, at page 603, and see Com. v. Heller, 147 Pa.Super. 68, at page 75, 24 A.2d 460; Com. v. Weldon, 159 Pa. Super. 447, at page 449, 48 A.2d 98.

The First National Bank in Cecil, a small bank in western Pennsylvania, had but three employees. It was stipulated that one of them, John F. Wagner, vice president and cashier of the bank, committed suicide during the course of an examination by national bank examiners, and that the examination revealed a shortage of $1,800,000.

As to a portion thereof,[4] defendant, a depositor and customer of the bank, and not within the class of persons specifically covered by § 656, was by virtue of § 2 indicted, tried and convicted as a principal. The indictment cites both sections, describing Wagner's official position, states that he is deceased, not indicted, and not a defendant therein; that having aided and abetted Wagner in committing an offense against the United States, defendant is a principal. It charges that defendant unlawfully, knowingly and fraudulently and with intent to injure and defraud the bank did wilfully misapply certain moneys, funds and credits of the bank. As to the manner and means of doing so, it charges that Wagner—being an officer and by virtue of the power, control, direction and management he possessed over the bank's affairs—and the defendant paid and caused to be paid out of the moneys, funds and credits of the bank a certain check drawn by the defendant on his account at the bank; that the check was not charged against defendant's account at the bank; that there was not sufficient credit balance in defendant's account to cover or pay the same; that the bank was not secured, repaid or reimbursed therefor and, as a result thereof, such sum was wholly withdrawn and lost to the bank and appropriated and converted to the use, benefit and advantage of the defendant and divers other persons to the grand jurors unknown, all of which defendant well knew.

Defendant's position is that since he is not described as a person within the category embraced by § 656, commission of the acts alleged would not constitute an offense against the United States; that defendant is not charged with aiding and abetting in the commission of a crime defined by § 656 because the indictment fails to allege commission of a crime by one covered by § 656. Defendant relies upon United States v. Weitzel, 1918, 246 U.S. 533, 38 S.Ct. 381, 62 L. Ed. 872, a case holding that a receiver was not included within the term "agent" described by § 5209, Revised Statutes, U.S.Comp.St. 1901, p. 3497, substantially a reenactment of § 52 of the Act of February 25, 1863, c. 58, 12 Stat. 665, 680, the first National Bank Act. But therein defendant overlooks the latter part of § 5209. As early as Coffin v. United States, 1895, 156 U.S. 432, at pages 446, 447, 15 S.Ct. 394, 39 L.Ed. 481, the court rejected the contention that no offense was stated against aiders and abettors because there was no assertion that they were officers of the bank or occupied any specific relation to the bank which made aiding or abetting possible; that to adopt the construction contended for would destroy the letter and violate the spirit of the law. And see Coffin v. United States, 1896, 162 U.S. 664, at page 666, 16 S.Ct. 943, 40 L.Ed. 1109. The only part an outsider can play in accomplishing the result is to aid and abet someone at the bank who has control of the funds. United States v. Hillegass, D.C.E.D.Pa.1910, 176 F. 444, at page 447, affirmed Hillegass v. United States, 3 Cir., 1910, 183 F. 199, at page 203, certiorari denied 219 U.S. 585, 31 S.Ct. 470, 55 L.Ed. 347. The original section was amended to include the latter within its scope. Richardson v. United States, 3 Cir., 1910, 181 F. 1, at

4. $4972.90. Counts Nos. 1 to 5 respectively, $3187.53, $500.00, $943.25, $119.12, $223.00. The language of the first count is typical of all five counts.

pages 6, 7.[5] See and cf. Com. v. Weldon, supra, 159 Pa.Super. at page 453, 48 A.2d at page 101. Then followed § 332 of the Criminal Code, 18 U.S.C. § 550 (1940 ed.) abolishing the distinction between principals and accessories, making them all principals whether the offenses be misdemeanors or felonies. Rooney v. United States, 9 Cir., 1913, 203 F. 928, at page 932; Ruthenberg v. United States, 1918, 245 U.S. 480, at page 483, 38 S.Ct. 168, 62 L.Ed. 414; Jin Fuey Moy v. United States, 1920, 254 U.S. 189, at page 192, 41 S.Ct. 98, 65 L.Ed. 214; United States v. Johnson, 1943, 319 U.S. 503, at pages 514, 515, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Klass, 3 Cir., 1948, 166 F.2d 373, at page 380, and finally 18 U.S.C.A. § 2, as amended. See Nye & Nissen v. United States, 1949, 336 U.S. 613, at pages 618, 620, 69 S.Ct. 766, 93 L.Ed. 919; Colosacco v. United States, 10 Cir., 1952, 196 F.2d 165, at page 167; United States v. Marinelli, 1944, 3 Cir., 142 F.2d 446.

▆ The very purpose of 18 U.S.C.A. § 2, as amended, was to clarify and make certain the intent to punish aiders and abettors, even though they may be incapable of committing the specific violation which they aided and abetted. See Senate Rep. 1020, § 17B, referring specifically to 18 U.S.C.A. § 656, Vol. 2 U.S.Code Cong. and Adm.Service 1951, p. 2578 at page 2583. It would have been clearer if the language read "is a principal and punishable as such". However, no change in existing law was contemplated. See Pereira v. United States, 5 Cir., 1953, 202 F.2d 830, at pages 836–837, affirmed 347 U.S. 1, at pages 9–11, 74 S.Ct. 358, 98 L.Ed. ——; United States v. Klock, D.C., 100 F.Supp. 230, reversed on other grounds, 2 Cir., 1954, 210 F.2d 217.

▆ One who aids and abets may at the option of the pleader be indicted and prosecuted as a principal. United States v. Klass, supra, 166 F.2d at page 380; Di Preta v. United States, 2 Cir., 1920, 270 F. 73, at page 75. And such an indictment is supported by evidence that defendant aided and abetted in its commission. United States v. Amorosa, 3 Cir., 1948, 167 F.2d 596, at page 599; Greenberg v. United States, 8 Cir., 1924, 297 F. 45, at page 48; Bliss v. United States, 1 Cir., 1900, 105 F. 508; United States v. Carengella, 7 Cir., 1952, 198 F. 2d 3, at pages 6–7; Karrell v. United States, 9 Cir., 1950, 181 F.2d 981, at page 985; United States v. Selph,[6] D.C.Cal. 1949, 82 F.Supp. 56, at page 58, and see 22 C.J.S. Criminal Law, § 103, at page 174; 42 C.J.S., Indictment, § 148, at page 1076; 27 Am.Jur. Indictments and Informations, § 95, p. 655; Com. v. Weldon, supra, 159 Pa.Super. at page 452, 48 A.2d at page 101; Com. v. Jones, 97 Pa.Super. 417, at page 422.

▆ The proof must establish that the offense was committed by someone and that defendant aided and abetted in its commission. Von Patzoll v. United States, 10 Cir., 1947, 163 F.2d 216, at page 219; Colosacco v. United States, supra, 196 F.2d at page 167. The question whether the proof shows the commission of an offense is one of fact and not of law. Coffin v. United States, supra, 156 U.S. at page 447, 15 S.Ct. at page 400. It was not necessary to charge Wagner with having committed the offense. The only necessity of inquiring into his conduct was to ascertain whether or not a crime had been committed. Gallot v. United States, 5 Cir., 1898, 87 F. 446, certiorari denied 171 U.S. 689, 19 S.Ct. 884, 43 L. Ed. 1179; Havener v. United States, 8 Cir., 1926, 15 F.2d 503, at page 506.

▆▆ Considering the indictment as a whole, McCoy v. United States, 9 Cir., 1948, 169 F.2d 776, at page 780, based on 18 U.S.C.A. Fed.Rules Crim.Proc. rule

---

5. Even before the statute, aiders and abettors were punishable as such whether or not they were themselves capable of committing the principal crime. Haggerty v. United States, 7 Cir., 1925, 5 F.2d 224, at page 225. See 14 Am.Jur.Crim.Law, § 73; 22 C.J.S., Criminal Law, § 88.

6. See and cf. United States v. Selph, supra, 82 F.Supp. 56; United States v. Warner, C.C.1886, 26 F. 616, and United States v. Heinze, 1910, 218 U.S. 532, at page 544, 31 S.Ct. 98, 54 L.Ed. 1139.

7(c) and upon practical considerations, United States v. Achtner, 2 Cir., 1944, 144 F.2d 49, at page 51; United States v. Giles, 1937, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493, we find that it contains all the elements of the offense charged, sufficiently apprised defendant of what he must be prepared to meet, and to enable him to plead the judgment as a bar to a subsequent prosecution. See Hagner v. United States, 285 U.S. 427, at page 433, 52 S.Ct. 417, 76 L.Ed. 861; United States v. Amorosa, supra, 167 F.2d at page 598. It was not necessary to advise defendant of the legal theory of the prosecution. United States v. Groopman, 2 Cir., 1945, 147 F.2d 782, at page 785; United States v. Pape, 2 Cir., 1944, 144 F.2d 778, at page 781.

"Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel,—few which might not be made more definite by additional allegations." Cochran and Sayre v. United States, 157 U.S. 286, at page 290, 15 S.Ct. 628, at page 630, 39 L.Ed. 704, and see Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097; United States v. Mills, 7 Pet. 138, at page 142, 32 U.S. 138, at page 142, 8 L.Ed. 636.

Defendant's motion in arrest of judgment will therefore be denied.

■■■ Upon a careful review of the testimony,[7] viewing the evidence and all inferences reasonably deducible therefrom in the light most favorable to the verdict, not being concerned with the weight of the evidence, the credibility of the witnesses, or conflicts in the testimony, see United States v. Stoehr, supra, 100 F.Supp. 143, we find that there was substantial competent evidence to support the verdict.

The jury could have found, and in support of their verdict we may properly assume did find, that over a period of months defendant drew a number of checks on his account at the bank when he knew his account was overdrawn, and that there were not sufficient moneys, funds or credits properly available at the bank to take care of them; that such checks would, without authority, be honored at the bank by Wagner out of bank funds and then concealed so as not to disclose overdrafts. When the bank finally closed a number of defendant's checks were not posted, the delay having been occasioned by Wagner. Most of defendant's bank business was conducted with Wagner in the privacy of a back room at the bank. Many times when Wagner was not present defendant told the bookkeeper at the bank to tell Wagner "to take care of my checks; don't send my checks back". In addition there was the stipulation as to the shortage and as to Wagner's suicide. A verdict based upon the foregoing was not against the law or the evidence. See United States v. Marinelli, supra, 142 F.2d 446.

For the foregoing reasons defendant's points 1, 2, 3 and 5 were denied. Point 4 was covered in the general charge. See United States v. Berg, 3 Cir., 1944, 144 F.2d 173, at page 177.

Defendant's exhibits 52 to 65, inclusive, were apparently notes given by defendant and others to the bank as securi-

7. The jurors were examined on their voir dire and a fair and impartial jury obtained. (See R. 2-4). Finnegan v. United States, 8 Cir., 1953, 204 F.2d 105; United States v. Griffin, 3 Cir., 1949, 176 F.2d 727, at page 731.

Defendant's motion for continuance based on alleged prejudicial pre-trial publicity being without merit was denied.

Defendant's motion for judgment of acquittal at the close of government's case was denied. By offering evidence on his own behalf defendant elected to abandon such motion. United States v. Stoehr, D.C.M.D.Pa.1951, 100 F.Supp. 143, at page 149, affirmed 3 Cir., 1952, 196 F.2d 276, 33 A.L.R.2d 836; Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, at page 290, certiorari denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662; United States v. Goldstein, 2 Cir., 1948, 168 F.2d 666, at pages 669, 670; Mosca v. United States, 9 Cir., 1949, 174 F.2d 448, at pages 450, 451. The motion was not renewed at the close of all the evidence but after the closing pleas were completed defendant requested the court to direct a not guilty verdict. Such motion was denied.

ty for money borrowed in 1941, 1942, 1947 and 1948. They were all repaid years before Wagner's death and were in no manner whatsoever in dispute. The government objected to the use of the exhibits on the ground that they were immaterial and irrelevant; that they had nothing to do with the government's analysis of defendant's account, with any conclusion drawn therefrom, or in the determination of any overdraft on defendant's account, (R. 342) and see objection as to remoteness (R. 357).

Defense counsel proposed to show that upon assuming custody of the bank's affairs the FDIC demanded payment from defendant for notes already paid during Wagner's lifetime and thereby to prove that the records of the bank upon which the government witnesses relied for their conclusions were wholly unreliable (R. 343).

Over the government's objection, defendant was afforded an opportunity to show any such evidence, including improper demands. Defendant showed that one note for $3,500 dated August 23, 1948 —defendant's exhibit 66—was paid during Wagner's lifetime but, lacking evidence of such payment, the FDIC again demanded payment in full. However, when proper evidence of payment was discovered, payment was readily acknowledged (R. 344–357).

In addition evidence was received as to a dispute over the amount due on a mortgage, (R. 357–367). No further questions were asked or testimony offered as to exhibits 52 to 65 inclusive. At R. 467, defense counsel made a general offer of defendant's exhibits A through W, AA through II, and 50 to 66 inclusive. As to the notes in question, see R. 468 and 475. Exhibits 52 to 65 were excluded. At R. 483, defense counsel asked the court to reconsider the order excluding defendant's exhibits 52, 53 and 54, stating that they covered transactions apparently completed in 1947 and 1948; that they evidenced the type of transactions that were taking place between defendant

and the bank and the nature of the documents exchanged between them. The notes in question had been paid in full and were not the subject of any dispute between the parties; considering that they could add no light and in view of the government's objections to that line of testimony, they were excluded. See United States v. Stoehr, supra, 100 F.Supp. at pages 155, 159, 160, and 196 F.2d at page 282.

 Finally as to the conduct of the trial. For every critical judgment, there must be a standard. "The judge conducting a jury trial in a federal court is 'not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct'. Quercia v. United States, 1933, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321." Glasser v. United States, 1942, 315 U.S. 60, at page 82, 62 S.Ct. 457, at page 470, 86 L.Ed. 680. See Johnson v. United States, 1943, 318 U.S. 189, at page 202, 63 S.Ct. 549, 87 L.Ed. 704; United States v. Kafes, 3 Cir., 214 F.2d 887; United States v. Stoehr, supra, 100 F.Supp. at page 154. "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 1953, 344 U.S. 604, at page 619, 73 S.Ct. 481, at page 490, 97 L.Ed. 593, and ordinarily cannot complain of error, if any existed, which he himself created or invited. Shields v. United States, 3 Cir., 1927, 17 F.2d 66, at page 69; United States v. Stoehr, supra, 100 F.Supp. at page 161. Perhaps the hitherto practically impossible was not here achieved. Paschen v. United States, 7 Cir., 1934, 70 F.2d 491, at page 504. The human element cannot be entirely eliminated from the trial of a case. Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, at page 613. However, fully cognizant of the statistical approach and the caveat suggested in United States v. Neff, 3 Cir., 1954, 212 F.2d 297, at pages 312, 313; cf. United States v. Stayback, 3 Cir., 1954, 212 F.2d 313, at pages 319–320, and Robinson v. Pennsylvania R. Co., 3 Cir., 214 F.2d 798; a reading of the report of the proceedings as the trial went on,[8]

8. A transcript of 562 pages covering a five day trial.

placing defendant's allegations in their proper setting, will demonstrate that although during the trial there were times when the trial judge was obliged to be strict and firm, to insist upon order and decorum in the court room,[9] see United States v. Johnson, 3 Cir., 1947, 165 F.2d 42, at page 50, the trial was conducted with fairness. See United States v. Kafes, United States v. Stoehr, Glasser v. United States, Johnson v. United States, supra, and see 53 Am.Jur. Trial, §§ 455, 458, 460 and 462.

Because of the nature of certain answers given by the defendant (R. 254–255), the kind of records kept by defendant as to certain alleged deposits, and the manner of identifying defendant's exhibits,[10] the testimony at times was not too clear.

As a result thereof, questions were asked by the trial judge for the purpose of developing the facts helpful to an intelligent understanding of the matter not only by the court but by the jury. He had no more important duty than this. United States v. Amorosa, supra, 167 F.2d at page 600; Simon v. United States, 4 Cir., 123 F.2d 80, at page 83; United States v. Rosenberg, supra, 195 F.2d at page 594; United States v. Johnson, 319 U.S. 503, at page 519, 63 S.Ct. 1233, at page 1241, 87 L.Ed. 1546; United States v. Kafes, supra; United States v. Stayback, supra, 212 F.2d at page 320; Moore v. United States, 5 Cir., 132 F.2d 47. It is the trial court's duty " * * * to see that all the truth is brought out so that the jury can arrive at a true verdict." United States v. Lee, 7 Cir., 107 F.2d 522, 529. Making certain that there was no misapprehension regarding our questions or our comment during the course of the trial we gave cautionary instructions. See R. 559.

Reading the testimony and the charge as an integrated whole,[11] (Boyd v. United States, 1926, 271 U.S. 104, 107–108, 46 S.Ct. 442, 70 L.Ed. 857; United States v. Berg, 3 Cir., 1944, 144 F.2d 173, at page 177), the record leaves no doubt that the case was fairly tried, submitted to the jury in a clear, impartial and thorough charge on both the facts and the law. Defendant's motion for a new trial will therefore be denied.

9. (a) As to the order of receiving exhibits, see cautionary instructions at R. 34; R. 495–496, R. 522, 552; cf. R. 68—R. 146, 147–150; R. 261–262; R. 494–496; (b) Defense counsel's exhibits on jury rail, R. 46, 47. Although defense counsel's table was on the other side of the court room, cf. position of defense counsel, R. 256–257 and at 272. See R. 496–497, and cf. 497 et seq. See defense counsel's suggestions and instructions of court. R. 249 and see R. 494; (c) Allowing time for a witness to answer. See e. g., R. 62 and R. 66; (d) Defense counsel's remark "let's educate the witness", R. 132–136; (e) As to exhibits O, S, R, P, and Q, see R. 258–260, and cf. R. 361–369, rejected at R. 477–478; see R. 480, "exhibit * * * fully described by the defendant in his testimony". See R. 481–482, R. 494–496; (f) see R. 311, 313, and see R. 204, 210–211.

As to government counsel (a) making statements instead of objecting, see R. 51–52, 336–337, and cf. 345–6–7–8–9; (b) See R. 122–123, cf. practice at R. 138–139, 182–183, "an old Pittsburgh custom", and see R. 466.

10. See e. g. R. 293–296, and see R. 468 et seq. As to EE, see R. 301 to 308, 319, 321, 472, and cf. 473–474 and 479. In this context, see and cf. R. 318 to 333.

11. As to Wagner, see particularly R. 535, 537 and 558.